DAVID L. BRANDON (SBN 105505)
CLARK HILL LLP
dbrandon@clarkhill.com
555 South Flower Street, 24th Floor
Los Angeles, CA 90071
T: (213) 891-9100

JOHN K. KIM (admitted *pro hac* vice)
CLARK HILL PLC
jkkim@clarkhill.com
14850 N. Scottsdale Road, Suite 500
Scottsdale, AZ 85254
T (480) 684-1100

JAMES P. MURPHY (admitted *pro hac vice*)
CLARK HILL PLC
jmurphy@clarkhill.com
130 East Randolph Street, Suite 3900
Chicago, IL 60601
T (312) 985-5921

Attorneys for Plaintiffs Gorilla Mind LLC and Gorilla Mind Beverage, Inc.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

GORILLA MIND LLC and GORILLA MIND BEVERAGE, INC.,

Plaintiffs,

v.

GORILLA DRINKS LIMITED and GORILLA USA CORP.,

Defendants.

Case No. 2:25-cv-02265-MEMF-JPR

**SECOND AMENDED COMPLAINT FOR**

**1. Trademark Infringement/Violation of Lanham Act (15 U.S.C. § 1114);**
**2. Federal Unfair Competition and False Designation of Origin/Violation of Lanham Act (15 U.S.C. §1125(a));**
**3. Deceptive Trade Practices in Violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200);**
**4. Unfair Competition and Trademark Infringement in Violation of California Common Law**
**5. Cancellation of U.S. Trademark Reg. No. 6,829,591**
**6. Cancellation of U.S. Trademark Reg. No. 6,617,226**
**7. Cancellation of U.S. Application Serial Nos. 90/075,969, 98/626,911, 79/421,610 and 79/423,809**

**DEMAND FOR JURY TRIAL**

Plaintiffs Gorilla Mind LLC ("GM") and Gorilla Mind Beverage, Inc. ("GMB") (collectively "Plaintiffs") by and through their attorneys, assert this Second Amended Complaint against Defendants Gorilla Drinks Limited ("GDL") and Gorilla USA Corp ("GUSA") (collectively, "Defendants") as set forth below:

## NATURE OF THE ACTION

1. This is an action arising out of Defendants' unlawful and willful infringement of Plaintiffs' valuable trademark rights. Plaintiffs assert claims for: (1) infringement of Plaintiffs' federally registered trademarks in violation of the Lanham Act (15 U.S.C. § 1114); (2) federal unfair competition and false designation of origin under the Lanham Act (15 U.S.C. §1125(a)); (3) deceptive trade practices in violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200); (4) unfair competition and trademark infringement in violation of California common law; (5) cancellation of GDL's U.S. Trademark Reg. Nos. 6,829,591 and 6,617,226 (15 U.S.C. §§ 1052(d) and 1064); and (6) cancellation of GDL's U.S. Application Serial Nos. 90/075,969, 98/626,911, 79/421,610 and 79/423,809 (15 U.S.C. §§ 1052(d) and 1064).

2. Plaintiffs established themselves with a clear focus: to deliver high-quality, results-driven products to consumers. Through extensive product development, focused brand building, and an unyielding commitment to excellence, since they began in 2017, Plaintiffs have in less than eight years grown their business into a nationally recognized name. In 2023, Plaintiffs expanded into the energy drink market with the launch of Gorilla Mind energy drink — a product that quickly distinguished itself with its active ingredient profile that delivers amplified focus, unmatched energy and elevated mental clarity. The Gorilla Mind energy drink became a rapid success with millions of loyal customers and added to Plaintiffs' already established and strong brand recognition and customer loyalty. Just one year later, in 2024, Defendants entered the U.S. market with their own infringing "Gorilla Energy" products.

## PARTIES

3. Plaintiff GM is an Idaho limited liability company with its principal place of business at 2145 E. Pine Avenue, Meridian, Idaho 83642.

4. Plaintiff GMB is an Idaho corporation with its principal place of business located at 2145 E. Pine Avenue, Meridian, Idaho 83642.

5. On information and belief, Defendant GDL is a private limited company formed under the laws of the country of Cyprus with its principal place of business located at Arch. Makariou III, 212 Seta Court, Office 12/1, 3030 Limassol, Cyprus.

6. On information and belief, Defendant GUSA is a Delaware corporation with its principal place of business located at 1135 S Beverly Dr., Beverly Hills, CA 90035.

7. Defendant GUSA is a citizen of the state of California and both Defendants do substantial business in California and this Central District and have committed acts within and outside California that caused injury to Plaintiffs within California and this Central District, and throughout the United States wherever Plaintiffs offer their products. Defendants committed these illegal acts while engaged in solicitation or sale activities within California and this Central District, including offering of energy drinks for sale or distribution in Beverly Hills, Los Angeles, and Santa Monica, to name a few. *See* **Exhibit A** (https://us.gorillaenergy.com/#finder).

8. As represented by GUSA's Chief Sales Officer, David Cott, GUSA is GDL's licensee in the United States. Doc. 60 (Declaration of David Cott) ¶ 3. On information and belief, GUSA is GDL's United States manufacturer and distributor of GDL's infringing energy drinks, and GUSA operates under control of and on behalf of (*i.e.*, as the agent of) GDL in California and throughout the United States. Doc. 60 (Declaration of David Cott) ¶ 29 (referring to GUSA "production of GORILLA energy drinks" in the U.S.).

9. GDL operates in the United States and in California at least through contractors and consultants. Mr. Mikhail "Misha" Lifshits is the Vice President of GUSA and is also a contractor for and consultant to GDL in the United States. Doc. 59 ¶ 2. Mr. Gleb Lifschitz is the President of GUSA and is also a contractor for and consultant to GDL in the United States. Doc. 58 ¶ 2.

10. In a Declaration submitted as evidence in this case, Mr. Misha Lifshits testified that "Gorilla Drinks Limited ("GDL") including through its predecessor Premier Beverages P.B. Limited began promoting Defendants' GORILLA energy drink brand [albeit without any connection to any goods or services] to consumers … in the United States since at least as early as 2018. GDL later continued promoting the brand in the United States through its trademark licensee GUSA. … I have personal knowledge of these promotional efforts because I either facilitated or was heavily involved in the marketing endeavors [of GDL]." Doc. 59 ¶ 2; *see also id*., at ¶¶ 14, 17, 19, 25, 26 (describing GDL promotions in Iowa, Kansas, Oklahoma, Arizona, Pennsylvania, and California).

11. In a Declaration submitted as evidence in this case, Mr. Gleb Lifschitz testified that "GDL … secured U.S. trademark registrations … since 2010." Doc. 58 ¶ 16. Mr. Lifschitz also testified that "an injunction [in this case] would be disruptive to <u>Defendants</u>' consumers, retailers, distributors" in the United States. *Id.*, ¶ 32; and ¶ 3 ("I will refer to <u>GUSA and GDL as 'Defendants'</u>"). Mr. Lifschitz also testified that "since at least 2018, GDL [has] … created awareness and demand of the [Gorilla] brand in the U.S." *Id.* ¶ 13 (emphasis added).

## <u>JURISDICTION AND VENUE</u>

12. Pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, this Court has original subject matter jurisdiction over this action because it arises under the laws of the United States, including the Lanham Act, 15 U.S.C. § 1051 *et seq*.

13. Pursuant to 28 U.S.C. § 1367, this Court has supplemental subject matter jurisdiction over Plaintiffs' pendent state law claims because these claims are

so related to Plaintiffs' federal claims that they form part of the same case or controversy and derive from the same common nucleus of operative facts.

14. This Court also has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332 because Plaintiffs are citizens of Idaho, Defendant GDL is a citizen of a foreign country, and GUSA is a resident of California, and the matter in controversy exceeds $75,000.

15. This Court also has jurisdiction over the cancellation claims, namely, Fifth and Sixth Claims for Relief, in this action pursuant to 28 U.S.C. §§ 2201 and 2202 and/or 15 U.S.C. § 1119.

16. This Court has personal jurisdiction over GUSA because GUSA is a citizen of California, and its principal place of business is located in this Central District.

17. Furthermore, this Court has specific personal jurisdiction over GUSA because GUSA has purposefully directed its actions to the State of California by advertising, offering to sell, and selling its infringing products to consumers within this state.

18. This Court has personal jurisdiction over GDL because GDL conducts continuous and systematic business in this forum in such a manner as to invoke the benefits and protections of its laws, and subjects itself to general personal jurisdiction in this forum by offering its products for sale in this jurisdiction. As stated above, GDL has asserted that it has conducted promotional activities in the United States and operates in the United States through and with at least dedicated contractors and consultants. Docs. 58, 59, 60.

19. On information and belief, GDL has purposefully directed its actions into the State of California by entering into business relationships with California businesses, by advertising specifically to California consumers, and by offering to sell, and selling its infringing products to customers in this state and thereby committing infringing acts in this state.

20. On information and belief, GDL specifically sells (via its licensee GUSA) infringing goods to distributors in the United States, including without limitation GUSA, with the intent that such goods be advertised, offered for sale, and sold to residents in the State of California.

21. On information and belief, despite its actual knowledge of Plaintiffs' trademarks, GDL has directed, and continues to direct, GUSA to produce, advertise, offer to sell, and sell infringing products to customers of the State of California and has induced GUSA to commit infringing acts in this state with the knowledge that such acts constitute infringement of Plaintiffs' trademark rights.

22. Venue is appropriate in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiffs' claims occurred in this Central District and because Defendants are subject to personal jurisdiction in this Central District.

## FACTUAL BACKGROUND

### Plaintiffs' Trademark Rights

23. Plaintiffs are industry-leading providers of nutritional and dietary supplements (collectively hereinafter "dietary supplements"), energy drinks, and other related products sold throughout the United States. Their products often dominate the sales charts for the sports nutrition and energy drink markets that they have entered. Plaintiffs offer numerous products in connection with a family of marks containing the common distinctive element GORILLA (collectively, the "GORILLA Marks") across their product lines that consumers use to associate with Plaintiffs.

24. Plaintiffs' GORILLA Marks include without limitation the following marks: GORILLA, GORILLA MIND, and GORILLA MODE, which are used for dietary supplements, energy drinks, and other related goods.

25. Since at least as early as December 2017, GM has offered and sold dietary supplements under the mark GORILLA MIND throughout the United States.

26. Since the launch of its GORILLA MIND dietary supplements, GM has also launched GORILLA MODE branded dietary supplements and provided online retail store services under the mark GORILLA MIND to promote and sell dietary supplements, energy drinks, and related products (*see* https://gorillamind.com).

27. Since 2017, GM has expanded its product line each year into additional categories, as illustrated below:




28. GM's products include, but are not limited to, cognitive support supplements, pre-workout formulations, protein powders and bars, sleep support supplements, energy drinks, energy shots, vitamin and mineral formulas, and more. GM carries dozens of SKUs, with product lines such as pre-workouts and energy drinks each being sold in several flavors.

29. Due to GM's substantial promotional and marketing activities, GM's GORILLA, GORILLA MIND, and GORILLA MODE products have become widely popular with and recognized by consumers across the United States, with its top selling regions including California, Texas, Florida, New York, Illinois, Pennsylvania, Washington, Ohio, Arizona, and New Jersey.

30. According to retail data for the full year of 2024 from SPINS LLC (*see* https://www.spins.com/, "SPINS®"), Plaintiffs' energy drinks are rated #1 in sales and #1 in units sold at The Vitamin Shoppe nationwide, accounting for a 18.5% category share, with a 12.7% increase compared to 2023.

31. According to SPINS® retail data for the full year of 2024, Plaintiffs' energy drinks are rated #3 in sales and #3 in units sold at GNC nationwide,

accounting for 14.1% category share. Plaintiffs first launched their energy drinks in GNC on or about February 16, 2024, and achieved those annual absolute sales metrics, despite having roughly 1.5 months less time to sell in the year than their competitors.

32. Plaintiffs' GORILLA products have an audience of over 109 million followers through social media sites, such as their own, affiliates', advertisers', and influencers' Instagram, TikTok, YouTube, Facebook, X, and other influencer channels:



33. Plaintiffs' GORILLA products also regularly receive organic, unsponsored exposure via customer testimonials, product reviews, mentions in podcasts, significant word of mouth, and more, through which exposure Plaintiffs' GORILLA brands reach a substantial portion of the consuming public at large.

<table>
<tr>
<td>
</td>
<td>Joe Rogan Experience #1744 - Derek from More Plates More Dates<br>https://youtu.be/LiWyf3wNEmQ?si=Jm810KVBxjsLw-a5&t=2764<br>Podcast episode #1744, publish date of December 3rd, 2021 on Spotify: https://open.spotify.com/episode/0T3I49n5hjB0zv8fgVP3OQ?si=743307d52212478a<br>(timestamps: 46:04 - 47:19)</td>
</tr>
<tr>
<td>
</td>
<td>My First Million Podcast - How Derek Went From $0 To +$100M With Supplements | More Plates More Dates<br>https://youtu.be/Zkad55pc_4w?si=1Blvl3mQuQOsje7&t=772<br>(timestamps: 12:52 - 16:07 & 31:36 - 34:21)</td>
</tr>
</table>

| | |
|---|---|
|  | *Jordan Peterson's Podcast - Fitness, Motivation, Mentorship, and Life's Calling \| @MorePlatesMoreDates \| EP 421* https://youtu.be/dp3pCrgi_Vc?si=9IbDpaGea8gaIyPR&t=82 (timestamps: 1:22 - 2:50) |
|  | *Andrew Wilkinson's Podcast - From Bouncer to Starting a $100M Health Empire with Derek MPMD*: *https://youtu.be/9AmUnTGo2_U?si=gErpHmCZWDL7n2Nz&t=196* (timestamps: 3:16 - 5:56) |

| | |
|---|---|
|   | *The Vitamin Shoppe YouTube Channel - Founder Spotlight \| Gorilla Mind* https://youtu.be/o0QsSM8_J0I?si=w6DyCYBAVtcvCQOX |
|   | *See CaffeineMan YouTube Channel \| The BEST Energy Drink Company! Ghost or Gorilla Mind?*: https://youtu.be/530FZlm0r8E?si=gkvjnVe7wxgJxlVv.<br><br>CaffeineMan is the Guinness World Record holder for the largest collection of energy drink cans, and is widely regarded by many as the most unbiased objective, and reputable energy drink review channel on YouTube. |

34. Besides the GORILLA MIND and GORILLA MODE marks, GM has extensively used a number of additional GORILLA Marks in promoting, marketing,

and selling its dietary supplement products. These additional GORILLA Marks include without limitation the following marks (collectively the "Registered GORILLA Marks"), each of which is registered with the USPTO:

| Registration Number | Registration Date | Mark | Goods And Services | Date of First Use In Commerce |
|---|---|---|---|---|
| 5878628 | 2019-10-08 | GORILLA MIND RUSH | IC 005: Dietary supplements sold through online trade channels. | At least as early as Dec. 4, 2017 |
| 6447213 | 2021-08-10 | GORILLA MODE | IC 005: Dietary supplements. | At least as early as Oct. 30, 2019 |
| 6447214 | 2021-08-10 | GORILLA MIND | IC 005: Dietary supplements. | At least as early as Dec. 3, 2017 |
| 6644743 | 2022-02-15 | GORILLA MIND | IC 005: Dietary supplements; Dietary supplements in the form of capsules, unregulated. | At least as early as Jan. 1, 2018 |
| 6644749 | 2022-02-15 | GORILLA MIND SMOOTH | IC 005: Dietary supplements; Dietary supplements in the form of capsules, unregulated. | At least as early as Jan. 1, 2018 |
| 6646008 | 2022-02-15 | GORILLA MODE NITRIC | IC 005: Dietary supplements in the form of a powder; Dietary and nutritional supplements for Premium Stimulant-Free Pre-Workout. | At least as early as Apr. 11, 2020 |
| 6646009 | 2022-02-15 | GORILLA DREAM | IC 005: Dietary supplements for Sleep and Recovery Formula; Dietary supplements in the form of a powder. | At least as early as Mar. 15, 2018 |

| Registration Number | Registration Date | Mark | Goods And Services | Date of First Use In Commerce |
|---|---|---|---|---|
| 6646007 | 2022-02-15 | GORILLA MODE ENERGY | IC 005: Dietary supplements in the form of a powder; Dietary and nutritional supplements for Instant Energy Formula. | At least as early as Sep. 11, 2020 |
| 7027615 | 2023-04-11 | GORILLA SHROOM | IC 005: Dietary supplements containing mushrooms. | At least as early as Nov. 1, 2021 |
| 6971698 | 2023-02-07 | SIGMA BY GORILLA MODE | IC 005: Dietary supplements. | At least as early as Apr. 1, 2022 |
| 7822186 | 2025-06-10 | GORILLA BAR | IC 005: Protein dietary supplements formed and packaged as bars. | At least as early as Apr. 15, 2024 |
| 7774104 | 2025-04-29 | GORILLA MIND | IC 005: Protein dietary supplements formed and packaged as bars;<br><br>IC 035: On-line retail store services featuring dietary and nutritional supplements. | At least as early as Apr. 15, 2024<br><br>At least as early as Jan. 1, 2018 |
| 7774105 | 2025-04-29 | GORILLA MIND | IC 005: Dietary and nutritional supplements; Protein dietary supplements formed and packaged as bars.<br>IC 035: On-line retail store services featuring dietary and nutritional supplements. | At least as early as Jan. 1, 2018<br><br>At least as early as Jan. 1, 2018 |



K7023\508250\282556234.v22-7/23/25

True and correct copies of the United States registrations listed above are attached hereto as **Exhibit B**.

35. On information and belief, consumers of both supplements and energy drinks are exposed to all, or at least the vast majority of, the marketing and advertising that Plaintiffs have done across their various brands.

36. GM has continuously and extensively used the Registered GORILLA Marks in commerce since their respective dates of first use on or in connection with their respective goods.

37. The registrations of the Registered GORILLA Marks provide prima facie evidence of GM's exclusive ownership of and exclusive right to use the Registered GORILLA Marks. In addition, U.S. Reg. No. 5,878,628 enjoys incontestable status pursuant to 15 U.S.C. § 1065.

38. In addition to the Registered GORILLA Marks, GM owns U.S. trademark applications for the following GORILLA Marks (collectively, the "Pending GM GORILLA Marks") and have used these marks in connection with dietary supplements, energy drinks, and other related products and services, including without limitation online retail store services, as indicated below:

| Serial Number | Filing Date | Mark | Goods And Services | Date of First Use In Commerce |
|---|---|---|---|---|
| 99072949 | 07-Mar-2025 | GORILLA | Dietary and nutritional supplements | At least as early as Mar. 27, 2018 |
| 97361231 | 13-Apr-2022 | GORILLA MIND RESPAWN | IC 005: Nutritional supplements for boosting energy and enhanced reaction and focus;<br>IC 032: Powders for making energy drinks. | At least as early as Feb. 26, 2023<br>At least as early as Feb. 26, 2023 |

| Serial Number | Filing Date | Mark | Goods And Services | Date of First Use In Commerce |
|---|---|---|---|---|
| 98154149 | 28-Aug-2023 | GORILLA MIND ENERGY MATRIX | IC 005: Dietary and nutritional supplements; IC 032: Energy drinks; Soft drinks; Non-alcoholic carbonated beverages; Sports drinks, namely, energy drinks; Sports and energy drinks. | At least as early as Apr. 17, 2023 At least as early as Apr. 17, 2023 |
| 98600154 | 13-Jun-2024 | SIGMA BY GORILLA MIND | IC 005: Dietary and nutritional supplements | At least as early as Aug. 10, 2023 |

True and correct copies of the United States trademark applications listed above are attached hereto as **Exhibit C**.

39. GM and/or GMB have continuously and extensively used the Pending GM GORILLA Marks in commerce since their respective dates of first use on or in connection with their respective goods.

40. Besides the Registered GORILLA Marks and the Pending GM GORILLA Marks, GM and/or GMB have used and acquired trademark rights to the following GORILLA Marks on or in connection with dietary supplements and other related goods and services (collectively, the "Additional GORILLA Marks"): GORILLA MODE BASE, GORILLA MODE CREATINE, GORILLA MODE EAAS, GORILLA MODE HYDROPRIME, GORILLA MODE AR, GORILLA MODE COLLAGEN PEPTIDES, and GORILLA MODE BETA-ALANINE.

41. As part of its family of GORILLA Marks, GM and/or GMB have also used the mark GORILLA by itself on or in connection with dietary supplements and related products. Plaintiffs have also used a number of their GORILLA Marks in a

way that emphasizes the term GORILLA, and/or separates it out from the rest of the GORILLA Mark such that the term GORILLA independently functions as a trademark to indicate the source of Plaintiffs' products. The dates of first use of these GORILLA marks in commerce all predate December 2024. Exemplary products bearing the GORILLA mark are illustrated below.

| | |
|---|---|
|   Date of first use: at least as early as March, 2018. |   Date of first use: at least as early as October, 2019. |
|   Date of first use: at least as early as November, 2020. |   Date of first use: at least as early as November, 2021. |

| | |
|---|---|
|   Date of first use: at least as early as April 17, 2023. |   Date of first use: at least as early as August, 2023. |
|   Date of first use: at least as early as April 15, 2024. |   Date of first use: at least as early as July, 2024. |

42. In or around December 2017, GM also started to provide online retail store services by offering dietary supplement products to consumers in the United States via its website, www.gorillamind.com, under the mark GORILLA MIND. Since then, GM's other products, including without limitation energy drinks, have been sold via GM's GORILLA MIND website. Plaintiffs continue to provide retail

store services featuring dietary supplements, energy drinks, and other related goods to U.S. consumers via its website.

43. Since its initial launch of dietary supplement products and consistent with its original business plans, GM has expanded its product lines under the GORILLA MIND mark into energy drinks, nutrition and wellness products, and other related goods and services. For example, GM began selling its energy drink products under the mark GORILLA MIND at least as early as April, 2023. Plaintiffs' energy drink products were immediately successful after launch in April 2023. On information and belief, the immediate and immense success of the Gorilla Mind energy drink products was based on the strong brand recognition and trademarks of GM developed via sales, marketing and advertising of its dietary and health supplements since 2017.

44. Due to the popularity of the GORILLA MIND energy drinks, GM's shareholders decided to transition GM's entire energy drinks business to a newly formed sister company, namely, GMB, also owned by the same shareholders.

45. Consistent with the foregoing transition plan, in or around January, 2024, GM assigned to GMB GM's entire rights in and to the GORILLA, GORILLA MIND, GORILLA MODE, GORILLA MIND ENERGY, GORILLA MODE ENERGY, GORILLA MIND ENERGY MATRIX marks for use in connection with energy drinks and other ready to drink products along with the goodwill associated therewith.

46. In accordance with the aforesaid assignment, in addition to the two (2) Pending GM Gorilla Marks, GMB owns the following GORILLA Marks (the "Pending GMB GORILLA Marks") for use in connection with energy drinks, other ready to drink products, and related online retail store services, for which U.S. trademark applications are pending in the USPTO:

| Serial Number | Filing Date | Mark | Goods And Services | Date of First Use In Commerce |
|---|---|---|---|---|
| 97325184 | 22-Mar-2022 | GORILLA MIND ENERGY | IC 032: Energy drinks; Non-alcoholic carbonated beverages; Soft drinks; Sports and energy drinks; Sports drinks, namely, energy drinks. | At least as early as April 17, 2023 |
| 98509837 | 19-Apr-2024 | GORILLA MIND BOMBSICLE | IC 032: Energy drinks; Sugar-free energy drinks. | At least as early as June 26, 2024 |
| 98509828 | 19-Apr-2024 | GORILLA MIND | IC 032: Energy drinks; Sugar-free energy drinks. | At least as early as April 17, 2023 |
| 98509826 | 19-Apr-2024 | GORILLA MIND | IC 032: Energy drinks; Sugar-free energy drinks.; IC 035: On-line retail store services featuring ready-to-drink beverages. | At least as early as April 17, 2023 At least as early as April 17, 2023 |

True and correct copies of the United States trademark applications listed above are attached hereto as **Exhibit D**.

47. GM and/or GMB have continuously and extensively used the Pending GMB GORILLA Marks in commerce since their respective dates of first use on or in connection with their respective goods.

48. GM and GMB are owned and controlled by the same shareholders ("Shareholders"), providing a unity of ownership between the two companies.

49. Through their ownership and control over both GM and GMB, the Shareholders have given GM the authority to control and manage all aspects of GMB's operations.

50. In addition to controlling its own operations, including without limitation its dietary supplement business, GM controls all aspects of the day-to-day operations of GMB, including without limitation labeling, packaging designs, branding, marketing, trademarking, and the nature and quality of all goods and services provided under GMB's marks, including without limitation GMB's GORILLA MIND energy drinks.

51. GM exclusively controls the use of its own marks and GMB's marks, including the selection, adoption, use of their trademarks, as well as the quality of all goods and services provided under their trademarks. Thus, a unity of control exists over the quality of all goods and services offered under GM's and GMB's marks, and all such goods and services originate from a single source.

52. GM's and GMB's products are sold together via the website www.gorillamind.com, the operation and the quality over which is controlled exclusively by GM. The website offers to consumers GM's and GMB's products under the umbrella of the GORILLA MIND house mark such that consumers would understand all such products as emanating from a single source.

53. GM's and GMB's products are also offered together on Amazon.com via a single GORILLA MIND store:




*See* https://www.amazon.com/stores/GorillaMind/page/14D167D3-8978-43E9-82B4-A1192CFE7EC3?ref_=ast_bln&store_ref=bl_ast_dp_brandLogo_sto

54. The products provided under Plaintiffs' GORILLA Marks are sold together at the GORILLA MIND store on Amazon.com under the umbrella of the GORILLA MIND house mark such that consumers would understand that all such products emanate from a single source.

55. Plaintiffs' GORILLA-branded dietary supplements have been sold on Amazon.com since brand inception in 2017, and have ranked among the top-performing products in their categories on Amazon.com for multiple consecutive years, generating tens of thousands of reviews, cementing Gorilla Mind's brand recognition among U.S. consumers.

56. GM's products and GMB's products both include the "www.gorillamind.com" source indicator on their packaging to indicate that these products emanate from a single source.

57. The common GORILLA element in Plaintiffs' GORILLA Marks is completely unrelated to any of Plaintiffs' associated products and is highly arbitrary.

Each of the GORILLA Marks is therefore inherently distinctive, providing a strong scope of protection.

58. Plaintiffs' GORILLA Marks have also acquired significant brand recognition by consumers through Plaintiffs' extensive and continuous use of the GORILLA Marks throughout the United States, and are commercially strong.

59. Since their first use of the GORILLA Marks, Plaintiffs have continuously and extensively used the GORILLA Marks in United States commerce and advertising such that consumers have come to readily associate these marks and their common element "GORILLA" with Plaintiffs. Plaintiffs have therefore valuable and enforceable trademark rights in each of their GORILLA Marks.

60. To protect their valuable GORILLA Marks, Plaintiffs actively monitor the marketplace for competitors who may be improperly using or otherwise infringing upon their marks. When Plaintiffs identify potential infringement or improper use, they take appropriate action to prevent continued misuse or infringement.

61. The date of first use of each of the GORILLA Marks predates the date of either Defendant's first use of the GORILLA mark in commerce in the United States, including Defendants' first launch of their GORILLA-branded energy drinks, or any other date that either Defendant may legally rely on for priority in the United States. Plaintiffs' use of each of the GORILLA Marks in commerce has continued to date since its corresponding date of first use in connection with its associated goods and services. Plaintiffs therefore have priority of use over Defendants with respect to each of Plaintiffs' GORILLA Marks, as well as the element "GORILLA" common throughout the GORILLA Marks.

62. Energy drinks are highly related to dietary supplements, and therefore Plaintiffs enjoy a priority right of at least as early as 2017 for their family of GORILLA Marks as to energy drinks. For example, many of the GM dietary

supplement products include the word "energy" in their description, and are used by consumers for the express purpose of bolstering energy.

63. A number of third parties, including large competitors, sell both dietary supplements and energy drinks, frequently under the same mark, showing the general trend in the dietary supplement industry to expand to other products, including energy drinks, and vice versa. In seeking trademark registration, many of these third parties apply to use the mark in connection with both Class 32 beverages (inclusive of energy drinks) and Class 5 dietary supplements, as seen by the registrations attached as Exhibits BJ to CZ of the previously submitted declaration of Carly Beck (Doc. 41-62 through 41-104). Indeed, the USPTO has found energy drinks and dietary supplements to be related products. *See, e.g.*, *PepsiCo, Inc. v. Rockstar Industries LLC*, Opposition No. 91247241 and Cancellations Nos. 92075918 and 92076204, 2024 WL 4925965, *19 (October 25, 2024)..

64. Energy drinks and dietary supplements share common purposes and functions (e.g., boosting energy, mental clarity and focus), as well as many common active ingredients (e.g., Caffeine, Alpha-GPC, L-Theanine, L-Tyrosine and/or N-Acetyl L-Tyrosine, Saffron, essential vitamins like Niacin (Vitamin B3), Vitamin B6, Vitamin B12, etc.). Indeed, some retailers sell and promote energy drinks to consumers as ready-to-drink "supplements."

65. Consumers tend to purchase dietary supplements and energy drinks together, often using them in combination with each other, and/or using them interchangeably, further evidencing their relatedness with each other.

66. A substantial portion of consumers of dietary supplements are also consumers of energy drinks. Indeed, Plaintiffs' dietary supplement and Defendants' energy drink products are sold to the same class of consumers, such as consumers who purchase products for enhancing energy.

67. Consumers have also referred to Plaintiffs' GORILLA MIND and/or GORILLA MODE dietary supplement products as "energy drink" products. *See, e.g.*, Doc. 38, ¶ 55.

68. Dr. Andrew Huberman, a renouned neuroscientist, Neurobioloty Associate Professor at Stanford Medicine and public figure with a widely followed health and science-focused podcast called Humberman Lab, published an unpaid post on the social media platform X (formerly known as Twitter), stating that when he consumes energy drinks, he chooses either "Jacko GO" or Plaintiffs' "@Derek Fitness Gorilla Mode (the canned version)." Although "Gorilla Mode" is the name of Plaintiffs' pre-workout dietary supplement, Plaintiffs' energy drink referenced in Dr. Huberman's post is actually sold under the name "Gorilla Mind." Dr. Huberman's use of "Gorilla Mode" to refer to the Plaintiffs' energy drink seems to illustrate and confirm the interchangeable use and recognition of Plaintiffs' GORILLA-branded products across both dietary supplement and energy drink formats. Moreover, the conflation of product names and categories reflects common, often observed consumer behavior. Consumers and Plaintiffs' customers often use dietary supplements and energy drinks together or interchangeably, and they perceive them as part of the same brand ecosystem.






K7023\508250\282556234.v22-7/23/25

69. Given the functional overlap, the shared active ingredients, the shared channels of trade and consumer bases, and the common trend of dietary supplement brands expanding into the energy drink space, Plaintiffs' family of GORILLA Marks naturally extended to energy drinks as part of their foreseeable and expected product line expansion well before Defendants' alleged first use date in 2020.

70. In a trademark Opposition proceeding (UK Opposition number OP000453474) in the United Kingdom between Plaintiff Gorilla Mind and Defendant GDL, GDL acknowledged that **dietary supplements and energy drinks** (which were the subject of the GDL UK trademark property asserted by GDL in the Opposition and which presumably can be referred to as "non-alcoholic isotonic beverages" in the UK) are "identical (or at least substantially similar)." **Exhibit E** [Doc. 68-11 at 21, 22 of 26] ("'dietary supplements; protein dietary supplements formed and packaged as bars' covered by [Gorilla Mind's trademark] Application in Class 5 **are identical (or at least highly similar) to** … 'non-alcoholic isotonic beverages' covered by [GDL's stylized mark GORILLA ENERGY DRINK] in Class 32." (emphasis added).

71. Consumers of dietary supplements would believe that energy drinks would come from the same source of the dietary supplements sold under a similar trademark.

72. The "related queries" data in Google Trends shows that actual users in the United States from 2017 to 2025 who searched for "Gorilla Mind" also searched for "Gorilla energy," even before Gorilla Mind began selling energy drinks in April 2023, as shown in the following Google Trends charts and graph, which comprise public Google data showing the comparison of all Google search queries made from the United States that included the words "Gorilla Mind" and those that included the words "Gorilla Energy," and their respective "interest" volumes, between December 1, 2017 and March 5, 2025.














K7023\508250\282556234.v22-7/23/25

73. The "Related Queries" data from December 2017, and up to March 5, 2025 shows Google searches made by users who also searched for "gorilla mind," and shows the top 5 "related queries" in the United States as related to products of Gorilla Mind: (1) "pre workout;" (2) "gorilla pre workout;" (3) "gorilla mind pre workout;" (4) "gorilla mind energy;" and (5) "gorilla mind drink."

74. These searches performed by Google users in the United States indicate that users reasonably expected Gorilla Mind to also offer an energy drink, even before GM began to do so in April 2023.

75. Approximately 4 years ago (around 2021), and prior to Plaintiffs' launch of their energy drink products (in April 2023), consumers associated Gorilla Mind with energy drinks and assumed that they had alrady begun selling energy drinks, as the following Reddit posting demonstrates:




https://www.reddit.com/r/moreplatesmoredates/comments/okb0ps/dereks_new_formula_crying_laughing_face/?rdt=44304 (Derek, referenced in the Reddit posting, is

one of Plaintiffs' principals). This posting not only demonstrates consumers' expectation of GM as an energy drink supplier, but also shows an instance of actual confusion between Plaintiffs' dietary supplements and Defendants' energy drinks.

76. This consumer data also demonstrates Plaintiffs' very strong brand recognition among consumers in the U.S. for its GORILLA products and the understanding that the source is Gorilla Mind. A very significant proportion of the Google users who search for 'gorilla energy' are also searching Plaintiffs' brand and name 'Gorilla Mind' and their products. And, searches for both "Gorilla Mind energy drink" and "Gorilla energy drink" both spiked tremendously at the exact time Plaintiffs launched their Gorilla Mind energy drink in April 2023, and remained consistently correlated afterwards. This demonstrates the correlation in the minds of consumers of the proximity of dietary supplements and energy drinks, as well as the use by consumers of the word "Gorilla" alone to refer to Plaintiffs and their goods. Plaintiffs created and acquired substantial rights in its Gorilla family of marks including in relation to energy drinks, prior to June 2020.

77. Plaintiffs' family of GORILLA Marks each begins with, or otherwise incorporates, the common inherently distinctive element "GORILLA," for their dietary supplements, energy drinks, and other related products and services.

78. Due to Plaintiffs' extensive and continuous use of their family of GORILLA Marks, the relevant consuming public readily recognizes dietary supplement products, nutritional products and related products such as energy drinks bearing the common term "GORILLA" as originating from Plaintiffs. Indeed, Plaintiffs are frequently referred to as "GORILLA" or "GORILLA ENERGY" by consumers of dietary supplements and energy drinks, as illustrated by the following examples:

| | |
|---|---|
|   | July, 2023 post on X (formerly known as Twitter) made by a customer reviewing Plaintiffs' "Gorilla Mind" energy drink and referring to it as "Gorilla Energy": https://x.com/coolsilver/status/1685442653628887040 |
|   | August, 2023 video posted on TikTok by a popular dietary supplements and energy drinks review channel referring to Plaintiffs' "Gorilla Mind" energy drink as "Gorilla Energy": https://www.tiktok.com/@konlan_james/video/7272034459665419563?is_from_webapp=1&web_id=7474517164978341381 |

| | |
|---|---|
| <br> | April, 2024 video posted on TikTok by the same review channel, again referring to Plaintiffs' "Gorilla Mind" energy drink as "Gorilla Energy": https://www.tiktok.com/@konlan_james/video/7353275438602685742?q=gorilla%20energy&t=1741482297786 |
| <br> | April, 2024 video posted on TikTok by another popular dietary supplements and energy drinks review channel referring to Plaintiffs' "Gorilla Mind" energy drink as "Gorilla": https://www.tiktok.com/@stoll.fit/video/7360840210365599019?is_from_webapp=1&web_id=7474517164978341381 |

| | |
|---|---|
| <br> | September, 2023 post on X made by a customer reviewing Plaintiffs' "Gorilla Mind" energy drink product and referring to it as "The Gorilla Energy Drink": https://x.com/Hi_ImN8/status/1700923801939161291 |




September 2024 post on X made by a Gorilla Mind ambassador referring to Plaintiffs' "Gorilla Mind" energy drink product as "Gorilla Energy" https://x.com/Sonnyshut/status/1831373561522745610




September, 2024 video posted on TikTok by dietary supplements and energy drinks retailer referring to Plaintiffs' "Gorilla Mind" energy drink as "Gorilla": https://www.tiktok.com/@nutrifitcle/video/7416724061184724266?is_from_webapp=1&web_id=7474517164978341381

| | |
|---|---|
|  | February, 2025 podcast featuring the co-founder of YoungLA referencing "Gorilla Mind" as "Gorilla" when discussing an upcoming collaborative energy drink product that will be sold by YoungLA and Gorilla Mind. YoungLA is one of the most successful and fastest growing trendy fitness apparel companies in the U.S., and their unprompted reference of "Gorilla Mind" as "Gorilla", further exemplifies how recognized Plaintiffs' brand and products are as "Gorilla" https://youtu.be/UDC5VVxOWP8?si=6aNrBs52r9qsWv6u&t=1403 (timestamp 23:23 – 23:57) |

79. As a result of Plaintiffs' consistent branding, widespread market penetration, and hundreds of millions of dollars in supplement sales under the GORILLA Marks, U.S. consumers widely associate the word "GORILLA" in the supplement and energy drink categories with Plaintiffs.

80. Since GM's initial launch in 2017, Plaintiffs' sales of products sold under their family of GORILLA Marks have increased dramatically year over year, reaching several millions of dollars in sales in just a few years. The sales of Plaintiffs' GORILLA Mark-branded products continued to grow rapidly,

collectively exceeding hundreds of millions of dollars generated in the United States since inception. Online direct-to-consumer website sales (via www.gorillamind.com), Amazon store sales, and retail store sales in the United States, each separately, generated tens of millions of dollars of revenue in 2024 alone.

81. Since GM's initial launch in 2017, its sales of dietary supplements under their family of GORILLA Marks have increased dramatically year over year. Sales revenues for Plaintiffs' products sold in conjunction with their GORILLA family marks have been as follows:

2017 – about $4,197

2018 – about $306,826

2019 – about $693,265

2020 – about $3,035,195

2021 – about $45,666,845

2022 – about $57,992,582

**All of the foregoing revenue numbers are for the sale of Plaintiffs' dietary supplements, as Plaintiffs did not release their energy drink products until 2023.**

82. Since the launch of Plaintiffs' dietary and nutritional supplement products in 2017, Plaintiffs have spent at least the following on advertising and marketing in the United States of products sold in conjunction with their GORILLA family marks:

2017 – about $29,643

2018 – about $66,949

2019 – about $94,277

2020 – about $315,667

2021 – about $5,078,793

2022 – about $6,853,947

**All of the foregoing marketing expenses are for the advertising of Plaintiffs' dietary supplements, as Plaintiffs did not release their energy drink products until 2023.**

83. Plaintiffs' dietary supplements, energy drinks, and other related products under the family of GORILLA Marks have been extensively and frequently advertised, promoted, and/or sold together (and even offered with the same flavor) such that consumers have come to associate the common character of the family, namely, the term "GORILLA," with a common origin, *i.e.*, Plaintiffs, as illustrated below:






84. Plaintiffs' products under the family of GORILLA Marks are sold through leading national retailers of nutritional supplements and energy drinks, including GNC and The Vitamin Shoppe, as well as via Amazon.com, Walmart, Army and Airforce Exchange Services, Dick's Sporting Goods, 7 Eleven, Gold's Gym, 24 Hour Fitness, Meijer, Roundy's (a division of Kroger), QuikTrip, Spinx, Parker's, Harmon, local retail stores, and other gyms, as illustrated below:




*See* https://www.gnc.com/brands/gorilla-mind/?srsltid=AfmBOoqpJkR9WUp9qWMWHCzj9togGhfjcv7lZg-ozoQyDHwM3_GLBZmm




*See* https://www.vitaminshoppe.com/b/gorilla-mind/food-drinks/drinks?gad_source=1&gclid=Cj0KCQiAkJO8BhCGARIsAMkswyiSj4Rrno-LqWeTFd1gIda9kPcGRqxLXKosfOO1LbmOlGQMdmb9UowaAv1QEALw_wcB



K7023\508250\282556234.v22-7/23/25

85. Collectively, Plaintiffs' products are currently sold in retail via over 12,000 points of distribution, not factoring in their own website and Amazon store presence online, which are each also significant.

86. Many of Plaintiffs' products sold under the GORILLA Marks are top sellers at one or more of the national retailers mentioned above, often ranking in the top five in their respective product categories. Walmart and GNC, for example, offer Plaintiffs' products in at least one store in every state, while The Vitamin Shoppe offers Plaintiffs' products in forty-seven states.

87. Plaintiffs' products under the family of GORILLA Marks are also distributed by DSD (direct store delivery) across multiple states, including without limitation California, South Carolina, Utah, and Texas, as well as many Midwest, Southern, and Northeast states and was rated as Idaho's fastest growing company in 2024 by Peak 43, a statewide ranking published by BoiseDev recognizing the fastest-growing private companies in Idaho based on verified revenue growth from 2020 to 2023. Available at https://boisedev.com/company/gorilla-mind/.

88. Plaintiffs and their products sold under the family of GORILLA Marks have frequently received unsolicited accolades and favorable coverage from the media, including without limitation Stack3d, which is a popular website providing news and reviews in the field of supplements and energy drinks, as illustrated below:

| | |
|---|---|
|   | *See* https://www.stack3d.com/2024/07/gorilla-mind-adds-supplements-to-its-gnc-lineup.html |
|   | *See* https://www.stack3d.com/2024/01/gorilla-mind-brand-of-the-year.html |

89. Plaintiffs have developed significant goodwill in their family of GORILLA Marks as a result of the extensive advertising and sales of their high-quality products, which are enjoyed by consumers and known to other entities in the dietary supplement and energy drink industries.


K7023\508250\282556234.v22-7/23/25

90. Plaintiffs' extensive advertising includes, but is not limited to, email newsletters, advertisements on Facebook, Instagram, Google, Meta, TikTok, Pinterest, Bing, Programmatic advertisements, Amazon PPC, Amazon DSP, Amazon Affiliate, and Shopify Affiliates. For example, each email newsletter reaches hundreds of thousands of customers.

- Sample email newsletter on April 17, 2023 (emailed to hundreds of thousands of customers)



- Sample Google advertisement:




- Sample Amazon advertisement:




- Sample YouTube advertisement:



- Sample Meta advertisements:












- Sample TikTok advertisements:










https://www.tiktok.com/@gorillamind/video/7407562768511094062
https://www.tiktok.com/@gorillamind/video/7391201734770642222
https://www.tiktok.com/@gorillamind/video/7386772441609063722
https://www.tiktok.com/@gorillamind/video/7384893144183229742

91. Since inception, Plaintiffs have spent tens of millions of dollars advertising Plaintiffs' products under the family of GORILLA Marks in the various advertising modes described above.

92. Plaintiffs' ambassadors include many influential figures (influencers) in the fitness industry, such as Derek (@moreplatesmoredates), Patty (@leanbeefpatty), Jesse James West (@jessejameswest), Sean Taaffe (@shizzylifts), Lexx Little (@lexx.little), as well as dozens of other influencers, several of whom have millions of followers collectively across their social media platforms. These influencers promote Plaintiffs' GORILLA-branded products regularly and significantly increase Plaintiffs' brand awareness. In total, Plaintiffs currently have approximately 495 active influencers promoting Plaintiffs' GORILLA brands and products. Some examples of the influencers for Plaintiffs' products are listed below:

| Photo | Name | Instagram | TikTok | Youtube | Facebook | X | Snapchat | Twitch |
|---|---|---|---|---|---|---|---|---|
|  | Derek | 927,000 | 228,700 | 2,020,000 | 59,000 | 103,800 | 62,100 | |
|  | Patty | 5,700,000 | 8,300,000 | 2,720,000 | | 177,600 | | 142,000 |
|  | Jesse | 1,700,000 | 1,400,000 | 6,480,000 | 3,900 | 9,122 | 653,000 | 5,600 |
|  | Sean | 1,400,000 | 3,400,000 | 174,000 | | | | |
|  | Lexx | 760,000 | 751,000 | 421,000 | | | | 27,900 |
|  | James | 218,000 | 121,700 | 116,000 | | | | |
|  | PKA | | | 1,230,000 | | | | |
|  | Ziegler | 162,000 | 1,200,000 | 30,900 | | | | |

93. Plaintiffs' products sold under their family of GORILLA Marks are consistently highly rated. For instance, on Amazon.com, hundreds of thousands of units of Plaintiffs' products have been sold to U.S. customers under their family of GORILLA Marks over several years, and are consistently highly rated, accruing

over 26,000 customer reviews. In 2022 alone Plaintiffs' sales of its dietary supplements on Amazon.com were about $18,999,024, exemplifying the commercial strength of Plaintiffs' Gorilla Marks.

94. On Plaintiffs' primary website, GorillaMind.com, hundreds of thousands of units of Plaintiffs' products have been sold to U.S. customers under their family of GORILLA Marks since around December 2017, and are consistently highly rated, accruing over 35,000 verified product reviews, and over 8,700 verified site reviews to date.

95. The GORILLA Marks, individually and as a family of marks, symbolize and represent the goodwill of Plaintiffs and are an intangible asset of substantial commercial value to Plaintiffs. These marks are arbitrary and inherently strong and have gained strong commercial secondary meaning or recognition as a result of Plaintiffs' extensive and continuous sales, advertising, and promotional efforts using the GORILLA Marks.

96. Plaintiffs own the exclusive rights to use and enforce each of the GORILLA Marks, and a family of marks, in and throughout the United States and to collect damages for all past, ongoing, and future infringements.

## **Defendants' Infringement**

97. On July 27, 2020, GDL's alleged predecessor, Premier Beverages P.B. Limited ("PB"), filed a trademark application, U.S. Application Serial No. 90/075,969 (the "GDL Application"), with the United States Patent and Trademark Office for the mark GORILLA ("GDL's Infringing Mark") for use in connection with "energy drinks; hemp drinks."

98. Plaintiffs' GORILLA Marks are commercially strong and inherently distinctive, having gained widespread recognition through years of continuous use, national marketing, and dominance in the dietary supplement and energy drink markets. The proximity of the goods is undeniable, as both Plaintiffs' and Defendants' products are energy-enhancing products which may be used

interchangeably by consumers. The marks are identical or highly similar, with both parties prominently using the arbitrary and dominant word "GORILLA," leading to overlapping consumer impressions. Plaintiffs cite multiple examples of actual confusion—including consumer posts on Reddit, TikTok, and X referring to Defendants' products as "Gorilla Energy," suggesting mistaken association with Plaintiffs. Both parties utilize overlapping marketing channels such as Amazon, retail stores, and social media, creating a shared consumer environment. Plaintiffs cite their placement even on the same shelf. Consumers of energy drinks and/or supplements are likely to exercise less care, especially given the wide retail availability and relatively low cost of the products. Defendants knowingly adopted the "GORILLA" mark despite their knowledge of Plaintiffs' longstanding prior use, indicating an intent to capitalize on Plaintiffs' reputation. Finally, Plaintiffs show a natural progression of product line expansion. Plaintiffs and its top competitors expanded from supplements to energy drinks making market overlap foreseeable. Each of these factors indicate a likelihood of confusion. *See, AMF Inc. v. Sleekcraft Boats, 599 F.2d 341* (9th Cir. 1979).

99. On January 6, 2022, PB and GDL executed a document titled "Confirmatory Trademark Assignment" which references a purported assignment from PB to GDL of the GDL Application and GDL's Infringing Mark covered thereby. The document is recorded at the United States Patent and Trademark Office at Reel 007552, Frame 0216.

100. On information and belief, the "Confirmatory Trademark Assignment" was not a valid or effective assignment of either the Infringing Mark or any goodwill associated with the Infringing Mark and was not sufficient to confer any priority of use for, and/or any ownership of, the Infringing Mark to GDL.

101. On August 1, 2023, despite GM's prior rights to its GORILLA Marks, the GDL Application was published by the United States Patent and Trademark Office for possible opposition by third parties.

102. GM filed two Extensions of Time to oppose in order to discuss a possible settlement with GDL. An initial meeting between the parties occurred on or about November 30, 2023.

103. Since no resolution was achieved by the initial meeting and GM's Extensions were scheduled to expire on January 29, 2024, GM filed a Notice of Opposition (Opposition No. 91289484) against the GDL Application, citing a likelihood of confusion between GDL's Infringing Mark and GM's GORILLA Marks.

104. Specifically, GM's Notice of Opposition identifies that GDL's Infringing Mark is, at least in part, identical to GM's GORILLA Marks, as the common dominant element of Plaintiffs' marks ("GORILLA") is GDL's entire mark.

105. Further, GDL's Infringing Mark covers goods that are identical to, so closely related to, and in highly related industries to, those goods covered by GM's GORILLA Marks – that is, dietary supplements and energy drinks.

106. After filing GM's Notice of Opposition, between January, 2024 and November, 2024, Plaintiffs further engaged GDL, in good faith, for the purpose of exploring options for reaching a reasonable agreement to resolve their dispute with GDL.

107. In order to continue in what GM thought was good faith negotiations by GDL, Plaintiffs freely consented to GDL's multiple requests for Extensions of Time so as to provide GDL with additional time for formally responding to the Notice of Opposition. However, GDL prolonged responses to Plaintiffs' outside counsel regarding the discussions and potential points of resolution.

108. On November 22, 2024, Plaintiffs' counsel sent a settlement proposal to GDL. However, there was no response from GDL.

109. Upon information and belief, the lack of response by GDL and the continued requests for Extensions of Time by GDL were all utilized to buy time for GDL to prepare for a U.S. launch of its energy drinks.

110. On information and belief, on or around December 4, 2024, despite GDL's receipt of Plaintiffs' proposed settlement, Defendants started to offer for sale their energy drink products under GDL's Infringing Mark (the "Infringing Products") to consumers in the United States via their website https://us.gorillaenergy.com/. Because production and launch of the infringing drinks would have required months of planning and preparation for sales in the United States, on information and belief Defendants prepared and planned the infringing activity while "negotiating" with Plaintiffs.

111. Defendants launched their Infringing Products with full knowledge of Plaintiffs' prior trademark rights in the GORILLA Marks and of Plaintiffs' family of GORILLA Marks, as well as with knowledge of Plaintiffs' claims that GDL's Infringing Mark infringes Plaintiffs' GORILLA Marks.

112. On information and belief, the activation of Defendants' U.S.-based website took place on or about December 4, 2024, just twelve days after Plaintiffs' settlement proposal was received by Defendants' then counsel.

113. On information and belief, Defendants' U.S.-based website was not active until around December 4, 2024. On information and belief, Defendants' original website located at the URL "https://gorillaenergy.com/" did not offer any products in the United States. On information and belief, the URL also did not re-direct to "https://us.gorillaenergy.com/", but now it does.

114. Immediately after Plaintiffs became aware of Defendants' offering of Infringing Products in the United States, on December 19, 2024, Plaintiffs' counsel sent a cease and desist letter to Defendants' counsel regarding Defendants' impermissible use of "GORILLA" and infringement on Plaintiffs' GORILLA Marks

and demanding that Defendants cease their infringing activities immediately. *See* **Exhibit F**, Plaintiffs' December 19, 2024 Cease and Desist Letter to Defendants.

115. Defendants' counsel responded to Plaintiffs' Cease and Desist Letter on December 31, 2024, refusing to cease Defendants' infringing activities. *See* **Exhibit G**, Defendants' December 31, 2024, Response to Plaintiffs' Cease and Desist Letter.

116. On information and belief, since December 2024, Defendants have been updating their website with false information. For example, Defendants began using the ® symbol in connection with the mark "Gorilla Energy" to mislead consumers that the mark is a registered trademark owned by Defendants, as illustrated below.




117. Despite Defendants' claim, there is no trademark filing or registration owned by either Defendant in the USPTO for the mark "Gorilla Energy."

118. Further, on information and belief, Defendants have misrepresented on its website that "Gorilla Energy was founded in New York City in 2008." On information and belief, GUSA was formed as a Delaware corporation on December 5, 2023, with a filing with California Secretary of State on March 18, 2024. On information and belief, GDL is a Cypress-based company with no apparent fixed place of business in the United States.

119. On information and belief, GDL and/or GUSA have previously stated at an exhibit held in a foreign country that "Gorilla Energy Drink is a product of a Moscow based brewing company in Russia." On information and belief, Defendants' statement on their website that "Gorilla Energy was founded in New York City in 2008" is patently false and is made with an intent to deceive consumers.

120. Defendants' infringement of Plaintiffs' GORILLA Marks is still ongoing and continues to cause confusion with Plaintiffs' products, tarnishing Plaintiffs' reputation as providers of high-quality dietary supplements, energy drinks, and other related products.

121. On information and belief, GDL ships or otherwise supplies Infringing Products to, or within, the United States for manufacture, distribution and sale by GUSA to consumers. On information and belief, GDL continues to supply the Infringing Products to GUSA with the knowledge that GUSA's sale of the Infringing Products constitutes direct infringement of Plaintiffs' GORILLA Marks. On information and belief, GDL directs GUSA to sell the Infringing Products to consumers and is intentionally inducing GUSA to infringe Plaintiffs' GORILLA Marks. Therefore, GDL has committed, and continues to commit, acts of direct and contributory infringement against Plaintiffs and their GORILLA Marks.

122. Defendants' Infringing Products include energy drinks sold in 16-ounce tall cans prominently featuring GDL's Infringing Mark. Examples of Defendants' Infringing Products are shown below:




*See* https://us.gorillaenergy.com/#products




*See* https://us.gorillaenergy.com/collections/juice-flavors/products/gorilla-energy-drink-12pk-watermelon-melon-16oz-cans

123. The following compares examples of Defendants' Infringing Products to examples of Plaintiffs' energy drink products:




**Plaintiffs' Product** **Defendants' Product** **Plaintiffs' Product** **Defendants' Product**

124. The following compares examples of Defendants' Infringing Products to examples of Plaintiffs' dietary supplement products:




**<u>An assortment of Plaintiffs' dietary supplements and correspond launch dates compared to Defendants' Infringing Products</u>**

125. With their Infringing Mark, Defendants seek to invoke the same commercial impression in consumers' minds as Plaintiffs by using the mark GORILLA in connection with energy drinks, capitalizing off of the brand recognition and success GM and GMB has garnered since 2017. As a result, a likelihood of confusion exists between Plaintiffs' GORILLA Marks (both individually and as a family) and Defendants' Infringing Mark.

126. Defendants' Infringing Mark wholly comprises the dominant GORILLA element common in each of Plaintiffs' family of GORILLA Marks, including without limitation GORILLA, GORILLA MIND and GORILLA MODE. As a result, Defendants' Infringing Mark is identical, or highly similar, to each of Plaintiffs' GORILLA Marks.

127. Defendants' Infringing Products are identical to Plaintiffs' energy drinks and are closely related to Plaintiffs' dietary supplement products.

128. Defendants market and sell their Infringing Products in the same channels of trade as Plaintiffs – mainly, online sales and through retail locations.

129. Defendants target the same consumers for their Infringing Products as Plaintiffs – ordinary consumers, including without limitation individuals seeking to improve energy.

130. On information and belief, due to the inexpensive price of Defendants' and Plaintiffs' energy drink products (generally around $3.00 per can), customers exercise little care, and/or conduct a limited investigation, if any, when purchasing such products. As a result, consumers are likely to believe that Defendants' energy drinks originate from the same source as Plaintiffs' products, or are a product line released, endorsed, or approved by Plaintiffs—when in fact they are not.

131. Defendants' use of their website address and their online retail store services featuring energy drinks under the Infringing Mark are also confusingly similar to Plaintiffs' website address and online retail store services featuring identical or related goods. This confusion is amplified by the shared retail and online marketplace channels used by both parties, and by the fact that consumers frequently use energy drinks and dietary supplements interchangeably or together.

132. Defendants' use of the identical term "GORILLA" on energy drinks — a product category that is both commercially and functionally related to dietary supplements — is likely to cause confusion, and has caused confusion many times since their launch.

133. Despite the fact that Defendants' Infringing Products have been offered to the consuming public in the United States only recently, actual confusion between Plaintiffs' GORILLA Marks (both individually and as a family) and GDL's Infringing Mark has already occurred and is likely to continue to occur. On information and belief, this confusion arises in significant part due to Plaintiffs'

long-standing and dominant use of the GORILLA Mark in connection with dietary supplements in the United States since 2017. Consumers encountering Defendants' "GORILLA" branded energy drinks are likely to believe, and in many cases have already assumed, that those products are affiliated with, sponsored by, or originate from Plaintiffs.

134. Plaintiffs have received repeated inquiries and public commentary from influencers, retailers, distributors, and customers mistakenly believing that Defendants' product is a Gorilla Mind product.

135. For example, in a Reddit posting announcing the launch of Defendants' Infringing Products in the United States and displaying a picture of the Infringing Products, consumers pointed out:

*"Yea this is totally not gonna get confused with any other energy drink"; "I already got it confused"; "Literally the only reason I even clicked on this post"*



*"Was just listening to him talk about this on PKA" (PKA podcast is sponsored by Gorilla Mind and regularly promotes Plaintiffs' products); "Wait is this not Gorilla Mind?"; "No, it's the likely target of their litigation"*



*“Could they have picked a better name 🤣”; “I mean I was moreso complaining that its SO similar to Gorilla Mind which is already wildly popular 😭”*




*“is this a ripoff of gorilla mind”; “Dollar Tree gorilla mind”*



*"This confused me for a minute, as I just tried Gorilla Mind recently."*




*"The picture had me think it was a special edition Gorilla Mind"*



*"Gorilla Mind is upper tier. This name is too close. Especially considering it's unlikely it's going to be as good as GM."*


rubbishcook-1970 · 5mo ago
Bucked Up
Gorilla Mind is upper tier. This name is too close. Especially considering it's unlikely it's going to be as good as GM.
2 Reply Award Share ···

*"Different from Gorilla Mind?"; "The copyright lawyers are going to make a lot of money with this"*


Excellent_Regret4141 · 5mo ago
Different from Gorilla Mind?
27 Reply Award Share ···
biesfpk OP · 5mo ago
different manufacturer
8 Reply Award Share ···
Hotchi_Motchi · 5mo ago
The copyright lawyers are going to make a lot of money with this
22 Reply Award Share ···

| |
|---|
| *"Literally thought this was a Gorilla Mind rebrand."*   |
| *"Gorilla Mind >"*   |




*See* https://www.reddit.com/r/energydrinks/comments/1gbqqez/the_arrival_of_gorilla_energy_in_the_usa/

136. Defendants' unauthorized use of the GORILLA mark is causing consumers to buy Defendants' Infringing Product thinking their energy drink is a GORILLA MIND product offered by Plaintiffs.

137. An employee of Plaintiffs was tagged in an Instagram story video clip of a woman holding Defendants' Infringing Product and indicating "Excited to try @gorillamind energy drink!!!" A screenshot of the video clip is provided below:







138. On or about February 10, 2025, Plaintiffs' customer service team received a text message from a customer who confused Defendants' GORILLA energy drink with Plaintiffs' GORILLA MIND energy drink. The customer did not like the taste of Defendants' GORILLA energy drink, stating:

> "Ugh. I just bought a 'Gorilla' energy drink thinking you guys maybe rebranded and expanded into more stores. It was gross. Couldn't even finish it and I've been drinking energy drinks for over twenty years. It was so bad. Might want to get your legal team on this one."




139. The customer referenced above bought "Gorilla Energy" thinking it was a GORILLA MIND product, had a negative experience, and then messaged Plaintiffs' customer service team to detail his experience, even suggesting that Plaintiffs seek legal counsel to deal with this issue.

140. Furthermore, Defendants' Infringing Products are now being included in Google ads alongside Plaintiffs' GORILLA MIND products when searching specifically for "gorilla mind." Below is a screenshot taken on or about March 11, 2025.




141. Classic Mall USA, an online seller of dietary supplements and energy drinks, has listed Defendants' infringing GORILLA energy drinks in a webpage intended for Plaintiffs' GORILLA-branded products, including dietary supplements and energy drinks. This demonstrates that even online retailers are confusing Plaintiffs' and Defendants' brands, selling Defendants' products <u>under Plaintiffs' brand, as shown below</u>.




Gorilla Mind – Classic Mall USA (https://classicmallusa.com/collections/gorilla-mind); and **Exhibit H**; and Doc. 69 ¶ 19 and Exhibit H thereto.

142. Despite being different products from different companies, Classic Mall did not even have a section on its website's dropdown menu for Gorilla Energy and only has a section for Gorilla Mind:




143. Pursuant to Plaintiffs' ongoing policing of their marks, Plaintiffs have informed Classic Mall and requested this confusion be corrected.

144. A customer on Amazon on May 7, 2025 posted a 1-star review of Defendants' infringing product on their Amazon page after presumably discovering that the product he/she purchased was not Plaintiffs' Gorilla Mind product, evidencing consumer confusion between Plaintiffs' GORILLA-branded energy drink and Defendants' GORILLA energy drink.



**Exhibit I**; and NOT gorilla mind. (https://www.amazon.com/review/ROX2JFLPDNW04/ref=cm_cr_srp_d_rdp_perm?ie=UTF8&ASIN=B0DW628LLL); and Doc. 69 ¶ 20 and Exhibit I thereto.

145. In or about April 2025, a consumer posted on the r/energydrinks subreddit, reviewing what he thought was "Cherry Berry GM [Gorilla Mind]", but was in fact Defendants' infringing product.




Doc. 69 ¶ 21 and Exhibit J thereto.

146. On June 4, 2025, GM's company Instagram account @gorillamind was tagged by a third party with the account https://www.instagram.com/daniellekamela.







In the video (*copy of video available from undersigned counsel for verification upon request*), the individual describes purchasing an energy drink labeled "Gorilla Ultimate Energy" after receiving a recommendation from her brother to try "Gorilla" energy drinks he had seen trending on TikTok. Upon visiting a gas station, she found a product labeled "Gorilla Ultimate Energy" and, believing this to be the product her brother referenced, purchased it. After sending a photo of the product to her brother, he replied that this was not the energy drink he had referenced, clarifying that he

meant “Gorilla Mind,” not “Gorilla Energy.” The individual expressed confusion over how two different energy drinks could have such similar branding, stating, in substance, “Which energy company decided to name their energy drink with Gorilla in it after the other one launched? Like that just doesn’t make sense to me and now I’m stuck drinking this Gorilla.” This influencer has more than 100,000 followers, whom she incorrectly told that a product that was not Plaintiffs’ product was “mediocre,” thus tarnishing Plaintiffs’ brand and harming Plaintiff’s reputation.

147. Defendants’ Infringing Products have caused confusion even among Plaintiffs’ own vendors. As a beverage manufacturer, Plaintiffs are subject to various state container deposit laws that require participation in bottle and can redemption programs. In the states where such programs apply, Plaintiffs’ compliance is managed by TOMRA, a third-party recycling and logistics provider. On July 16, 2025, Plaintiffs received an email from TOMRA inquiring about “New Gorilla Mind UPC’s” associated with five products submitted for redemption by a distributor. All five products were Defendants’ Infringing Products. A screenshot of the email is included below and attached as in full as **Exhibit J.**

**Lisa Osborn** <lisa.osborn@tomra.com> Wed, Jul 16, 2025 at 1:52 PM
To: Mickey O'Marra <mickey.omarra@gorillamind.com>

Hi Mickey!

I hope you are doing well, it has been a bit since we last spoke.

Can you confirm that these are new Gorilla Mind UPC’s? These were sent to us by a distributor for approval but we don’t have these in our database yet. Want to make sure the UPC on the can is accurate before we set them up.

| ***BRAND NAME*** | ***DESCRIPTION*** | ***SIZE*** | ***CAN-BTL-PET*** | ***EACHES U.P.C.*** |
|---|---|---|---|---|
| GORILLA ENERGY | ULTIMATE 16C | 16OZ | CAN | 00-8-60012-33774-3 |
| | MANGO COCON 16C | 16OZ | CAN | 00-8-60012-33770-5 |
| | WATERMELON 16C | 16OZ | CAN | 00-8-60012-33771-2 |
| | STRAWKIWI 16C | 16OZ | CAN | 00-8-60012-33776-7 |
| | CHERRY BRRY 16C | 16OZ | CAN | 00-8-60012-33775-0 |

148. On or about February 27, 2025, Plaintiffs became aware that Defendants' Infringing Products are being displayed right beside or next to Plaintiffs' products on shelves in stores, as illustrated below.




*Circle K located - San Diego, California*

Mr. David Cott, the Chief Sales Officer of GUSA, has testified that "GUSA's field representatives are encouraged to position GUSA's energy drinks on shelves alongside competitor companies with the most market share, or the most 'facings' in the refrigerator, and at consumer eye level" strongly suggesting an intent by Defendants to purposefully capitalize on customer confusion and the goodwill Plaintiffs have built over several years. Doc. 60 ¶ 9.

149. On or about March 3, 2025, Plaintiffs became aware of more store locations where Defendants' Infringing Products are being placed directly beside theirs, as illustrated by the following photos.




*Presidio Market - San Diego, California*




*BoBar Liquor II - San Diego, California*




*Palm Springs Liquor - San Diego, California*

150. Defendants' use of marks identical to or confusingly similar to Plaintiffs' GORILLA Marks in connection with the advertisement and sale of Defendants' energy drinks is likely to confuse consumers as to the source of the energy drinks by causing them to believe that Defendants and/or their Infringing Products are somehow associated, affiliated or connected with, or sponsored or approved by, Plaintiffs when they are not.

151. Defendants have not, nor have ever been, affiliated with Plaintiffs and have never been licensed or otherwise authorized by Plaintiffs to use the GORILLA Marks.

152. Defendants' unauthorized use of the GORILLA mark is with actual notice of Plaintiffs' registered and applied-for rights therein by virtue of both actual awareness of Plaintiffs and Plaintiffs' federal trademark registrations.

153. Defendants' use of the GORILLA Marks is with the deliberate intent to freeride on the goodwill that Plaintiffs have established in their GORILLA Marks (both individually and as a family) by creating a false impression as to the source and sponsorship of Defendants' products. For example, Plaintiffs' sales on Amazon have increased exponentially over the years since Plaintiffs have entered into national retail stores, such as The Vitamin Shoppe, GNC, and Walmart, as mentioned herein. Moreover, according to Similar Web's website analysis (*see* below), Plaintiffs' website received millions of website visits in just the past three months. It is apparent that Defendants are attempting to misappropriate the fame and notoriety of Plaintiffs' GORILLA brand.




154. If Defendants' conduct is not enjoined, Plaintiffs will face irreparable harm, particularly due to great injury to the value of the GORILLA Marks and the ability of the GORILLA Marks to distinguish Plaintiffs' goods.

155. Defendants' conduct is intentionally unlawful, malicious, willful, and wanton. Defendants' continued use of their Infringing Mark after notice and direct communications with Plaintiffs' counsel about the GORILLA Marks reflects a clear, intentional scheme to unlawfully benefit from willful infringement of Plaintiffs' intellectual property and to unfairly compete with Plaintiffs.

**FIRST CLAIM FOR RELIEF – FEDERAL TRADEMARK INFRINGEMENT**

**(15 U.S.C. § 1114)**

156. Plaintiffs incorporate by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

157. GM exclusively owns valid and enforceable rights in the Registered GORILLA Marks.

158. Defendants have, without GM's consent, used marks, words, names, and/or symbols that are the same as or substantially similar to each of GM's Registered GORILLA Marks in commerce in connection with the sale, offering for sale, distribution, or advertising of their offending products in a manner that is likely to cause confusion, mistake, or to deceive the public.

159. Defendants have, without GM's consent, reproduced, copied, and/or colorably imitated the Registered GORILLA Marks and applied such reproduction, copy, and/or colorable imitation to the advertisements of its offending products in connection with the sale, offering for sale, distribution, or advertising of their offending products in a manner which is likely to cause confusion, or to cause mistake, or to deceive.

160. As a direct and proximate result of Defendants' conduct, GM has suffered and will continue to suffer economic harm in the form of lost revenue and lost profits, and in the form of harm to the value and goodwill associated with each of the Registered GORILLA Marks and GM's reputation in the industry as a provider of high quality dietary supplements.

161. Because and since Defendants have been aware of GM, GM's Registered GORILLA Marks, and GM's nutritional supplements, and because Defendants' Infringing Mark are identical to and/or nearly identical to GM's Registered GORILLA Marks, Defendants' infringing conduct was and is knowing and willful.

162. Given the Defendants' willful, intentional, and knowing conduct, including but not limited to its continued and continuing infringement after having knowledge of their infringement, this is an exceptional case under 15 U.S.C. § 1117.

163. As the acts alleged herein constitute infringement by Defendants of each of GM's Registered GORILLA Marks under 15 U.S.C. § 1114, and as GM has no adequate remedy at law, GM is entitled to injunctive relief as well as monetary damages and other remedies as provided by 15 U.S.C. §§ 1116, 1117, and 1118, including recovery of the Defendants' profits, Plaintiffs' lost profits, all damages sustained by Plaintiffs, the cost of this action plus interest and including reasonable attorneys' fees, other increased damages as the Court may deem appropriate, and/or other amounts yet to be determined.

**SECOND CLAIM FOR RELIEF –**

**Unfair Competition and False Designation of Origin under the Lanham Act**

**(15 U.S.C. § 1125(a))**

164. Plaintiffs incorporate by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

165. Plaintiffs' GORILLA Marks and family of GORILLA Marks constitute valuable intangible assets, including reputation and goodwill.

166. Defendants have unlawfully used Plaintiffs' GORILLA Marks, and colorable imitations thereof, in connection with their offending products and services, and in their advertising of the same in a manner which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or

association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval of the offending products.

167. Defendants have used Plaintiff's GORILLA Marks, or colorable and confusing imitations thereof, in connection with energy drinks and the sale and advertising of the same in a manner that misrepresents the source, nature, characteristics, or qualities of the offending products.

168. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and continue to suffer economic harm in the form of lost sales, lost profits and in the form of harm to the value and goodwill associated with each of the GORILLA Marks, as well as the family of GORILLA Marks, and Plaintiffs' reputation in the industry as a provider of high quality energy drinks, dietary supplements, and other related products.

169. Defendants' infringing conduct was and is knowing and willful.

170. Given the Defendants' willful, intentional, and knowing conduct, including but not limited to its continued and continuing infringement after having knowledge of the infringement, this is an exceptional case under 15 U.S.C. § 1117.

171. As the acts alleged herein constitute infringement by Defendants of the GORILLA Marks under 15 U.S.C. § 1125(a), and as Plaintiffs have no adequate remedy at law, Plaintiffs are entitled to injunctive relief as well as monetary damages and other remedies as provided by 15 U.S.C. §§ 1116, 1117, and 1118, including recovery of the Defendants' revenues and profits, Plaintiffs' lost profits, all damages sustained by Plaintiffs, the cost of this action plus interest and including reasonable attorneys' fees, other increased damages as the Court may deem appropriate, and/or other amounts yet to be determined.

## THIRD CLAIM FOR RELIEF III – California Unfair Competition (Cal. Bus. & Prof. Code § 17200)

172. Plaintiffs incorporate by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

173. By engaging in the practices and actions described above, Defendants have committed one or more acts of unfair competition under California Business and Professions Code §§ 17200 et seq.

174. Defendants have engaged in, and continue to engage in, such unfair competition with full knowledge that such acts and practices are wrongful, arbitrary, without reasonable business or commercial justification, unethical, oppressive, and have caused, and will cause, substantial irreparable harm and injury to Plaintiffs.

175. Defendants' conduct, including their unauthorized use of the GORILLA mark, is unlawful and unfair, and constitutes, inter alia, trademark infringement in violation of California Business and Professions Code §§ 17200 *et seq*.

176. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and continue to suffer economic harm in the form of lost sales, lost profits and in the form of harm to the value and goodwill associated with each of the GORILLA Marks, as well as the family of GORILLA Marks, and Plaintiffs' reputation in the industry as a provider of high quality energy drinks, dietary supplements, and other related products.

177. Plaintiffs' GORILLA Marks and family of GORILLA Marks constitute valuable intangible assets, including reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer further harm to its reputation and goodwill. The past, present, and future harm to Plaintiffs' reputation and goodwill is difficult to quantify and constitutes an injury for which Plaintiffs have no adequate remedy at law. Plaintiffs are therefore entitled to a judgment enjoining Defendants from engaging in further unfair competition.

178. Plaintiffs are also entitled to restitution and disgorgement of the profits and other ill-gotten gains by Defendants from their unlawful actions and practices in violation of California Business and Professions Code §§ 17200 *et seq*.

179. Plaintiffs are also entitled to the recovery of their attorney's fees, and any other remedies permitted under the law.

**FOURTH CLAIM FOR RELIEF – California Common Law Unfair Competition**

180. Plaintiffs incorporate by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

181. By engaging in the above-described practices and actions, Defendants have committed unfair competition prohibited by California common law.

182. Defendants' unauthorized use of the GORILLA mark for energy drinks harms Plaintiffs by confusing their customers as to the source, sponsorship or affiliation of Defendants' products with Plaintiffs. Defendants' continuing infringement and willful disregard to Plaintiffs' trademark rights shows its intent to trade on the goodwill of Plaintiffs by confusing consumers and customers as to the source, sponsorship or affiliation of Defendants' GORILLA-branded energy drinks.

183. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs are entitled to restitution and disgorgement of profits in an amount according to proof at trial and entitled to preliminary and permanent injunctive relief restraining Defendants, and their officers, directors, members, agents and employees, and all persons acting in concert with them, from engaging in any further acts unfair competition.

**FIFTH CLAIM FOR RELIEF – Cancellation of U.S. Trademark Registration No. 6,829,591 (15 U.S.C. §§ 1052(d), 1064)**

184. Plaintiffs incorporate by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

185. As more fully alleged above, there is an actual, substantial, and continuing justiciable controversy between the parties regarding the infringement of Plaintiffs' GORILLA Marks and Defendants' claimed defenses thereto. And,

Plaintiffs will be damaged by the continued registration of Defendant GDL's U.S. Trademark Registration No. 6,829,591 (the "'591 Registration").

186. Under the Lanham Act, a party has grounds to cancel a registered mark if the mark "has been abandoned" (*see* Section 14 of the Lanham Act, 15 U.S.C. § 1064) or, within five years from registration, if the mark "so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive." (*see* Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d)). Additionally, under Section 37 of the Lanham Act, 15 U.S.C. § 1119, "in any action involving a registered mark[,] the court may determine the right to registration, order the cancelation of registrations, in whole or in part, … and otherwise rectify the register with respect to the registrations of any party to the action."

187. Defendant GDL obtained the '591 Registration for the colorized composite logo mark GORILLA ULTIMATE & Design for "energy drinks; carbonated soft drinks; flavored waters" ("GORILLA ULTIMATE Mark") exactly as shown here:




A copy of the '591 Registration is attached hereto as **Exhibit K**.

188. The ‘591 Registration for the stylized GORILLA ULTIMATE Mark has a registration date of August 30, 2022, a filing date of July 24, 2020, a claimed “priority date” of June 16, 2020 based on a Russian Federation trademark application, but no claimed date of first use in U.S. commerce.

189. Since at least 2017, years before the claimed priority, filing, and registration dates of the ‘591 Registration, Plaintiffs have continuously used and promoted their family of GORILLA Marks in interstate commerce in connection with its dietary supplements and other related products. By virtue of Plaintiffs’ continuous and substantial use and promotion of the GORILLA Marks, Plaintiffs’ GORILLA family of marks and related GORILLA registered and common law marks have become a strong identifier of Plaintiffs and their products, and distinguish Plaintiffs’ products from those of others. Plaintiffs have built significant and valuable goodwill in their GORILLA Marks.

190. On information and belief, GDL did not commence bona fide use of the GORILLA ULTIMATE Mark of its ‘591 Registration in U.S. at any time prior to receiving Plaintiffs’ cease and desist letter of December 19, 2024 and/or prior to the filing of this Action. Although Defendants started selling energy drinks in the United States in December 2024, Defendants’ website(s) (https://us.gorillaenergy.com/ or https://gorillaenergy.us) shows only a product purporting to bear the GORILLA ULTIMATE Mark as “out of stock,” while all other products are available for purchase. As alleged in the declaration of Gleb Lifschitz, Defendants did not intend to use the GORILLA ULTIMATE Mark on products sold in the United States. (Doc. 58-11.) Indeed, when Defendants’ website was launched in the United States in December 2024, the product bearing the GORILLA ULTIMATE Mark was not even included on the website. *See* the following screenshot of the products offered on https://gorillaenergy.us on December 4, 2024.




191. On information and belief, only after Plaintiffs sent their cease and desist letter to Defendants on December 19, 2024, did Defendants add to their website https://us.gorillaenergy.com the product purporting to bear the GORILLA ULTIMATE Mark. On information and belief, the following screenshot shows the products appearing on https://us.gorillaenergy.com on December 24, 2024.




192. On information and belief, while all of the products that were originally offered for sale on Defendants' website https://gorillaenergy.us or https://us.gorillaenergy.com since December 4, 2024 were presumably available for purchase as of December 24, 2024, the product purporting to bear the GORILLA ULTIMATE Mark (*see* the product entitled "GORILLA ENERGY Ultimate Special Edition" in the screenshot in the preceding paragraph, which product will be referred to hereinafter as the "Ultimate Special Edition Product") was marked as "OUT OF STOCK" and was not available for purchase as of December 24, 2024. More than four months after Defendants' launch of their Infringing Products in early December

2024, Defendants' Ultimate Special Edition Product was marked as "OUT OF STOCK" and was not available for purchase from Defendants' website.

193. On information and belief, while Defendants sell their other Infringing Products on Amazon.com, the Ultimate Special Edition Product is not offered for sale on Amazon.com. *See* the following screenshot showing Defendants' products currently sold from their Amazon storefront.







*See* [https://www.amazon.com/stores/GorillaEnergy/page/2EFB85F3-9A56-4AC8-A8C6-B3770DA6924E?lp_asin=B0DW5VCYBY&ref_=ast_bln&store_ref=bl_ast_dp_brandLogo_sto](https://www.amazon.com/stores/GorillaEnergy/page/2EFB85F3-9A56-4AC8-A8C6-B3770DA6924E?lp_asin=B0DW5VCYBY&ref_=ast_bln&store_ref=bl_ast_dp_brandLogo_sto) .

194. On information and belief, while Defendants are selling their other Infringing Products at retail stores in the United States, the Ultimate Special Edition Product is not being offered for sale at any retail stores.

195. Moreover, the version of the Ultimate Special Edition Product that was eventually listed on Defendants' U.S. website was materially different from products previously sold by Defendants in international markets. This is supported by a consumer review posted on or about June 24, 2025, in which the verified purchaser remarks that the U.S. version "is not what I expected," and that "it is much better in Kazakhstan." The reviewer attributes the difference in taste to "some kind of taste here, probably because of the sugar substitute, and expresses clear disappointment. This strongly suggests that the product offered under the GORILLA ULTIMATE Mark in the United States is not the same formulation, flavor profile, or consumer experience as the one historically sold by GDL abroad. This divergence further undermines any claim by Defendants that the U.S. listing constitutes a bona fide use in commerce under the Lanham Act, particularly where the mark was not associated with actual goods being sold in a continuous and consistent manner. Rather, the evidence supports the inference that the GORILLA ULTIMATE-branded product was hastily added to the U.S. site post-notice, without continuity of product identity, market presence, or commercial intent. *See* the following screenshot of the Verified Purchaser review.




196. Defendants are providing energy drink retailers and/or distributors in the United States with marketing materials for their Infringing Products. On information and belief, while these marketing materials include the same five products that are available for purchase from Defendants' website or their Amazon.com store, the Ultimate Special Edition Product is conspicuously absent from those marketing materials, as demonstrated by the following photograph of a marketing box of Defendants' current energy drink offerings.




197. On information and belief, Defendants added the Ultimate Special Edition Product to their website after receiving Plaintiffs' cease and desist letter only to create a false impression that Defendants are using the GORILLA ULTIMATE Mark in the United States in an effort to improperly maintain the '591 Registration. On information and belief, this purported "use" of the GORILLA ULTIMATE Mark is not bona fide, because Defendant GD has already abandoned the registered GORILLA ULTIMATE Mark.

198. On information and belief, the registered GORILLA ULTIMATE Mark is an old design of Defendant GDL. Since the registration date in August 2022, on information and belief, Defendant GDL rebranded and now uses only the new design shown on its website (with sharp/defined edges in the gorilla head) for worldwide use and launch in the United States.

199. In an email sent on June 26, 2024, from Defendant GDL to Plaintiffs, GDL's representative Eugene Kashper represented "Slides from a presentation of the modernized design that will be used globally instead of the traditional design [including the registered GORILLA ULTIMATE Mark] which hasn't changed much since 2009 and this is the design that we are planning to launch in the US":




*See* Doc. 58-3 at 3 of 6.

200. No design corresponding the registered GORILLA ULTIMATE Mark was included in the presentation of GDL's "modernized design that will be used globally … and that [GDL planned] to launch in the US", evidencing GDL's intent to not use that mark in the United States.

201. Upon information and belief, Defendant GDL has never made bona fide use of the registered GORILLA ULTIMATE Mark in commerce within the United States. On information and belief, when GDL decided to rebrand the registered GORILLA ULTIMATE Mark to the new design, GDL intended not to use or resume use of the GORILLA ULTIMATE Mark of the '591 Registration in U.S. commerce, and/or intended to discontinue any use of this mark with intent not to use, or to resume use of the mark in U.S. commerce.

202. On information and belief, since its rebranding decision discussed above, GDL has discontinued selling the product bearing the registered GORILLA ULTIMATE Mark in foreign markets, and GDL's purported "global" website https://gorillaenergy.com/?locale=global&lang=en does not show any such product, further evidencing that it had intended to abandon this mark internationally, including the United States, when it rebranded its products, as represented in GDL's June 26, 2024 email to GM. In addition, on information and belief, while GDL sells products with the rebranded designs in the United States, it does not offer to sell any products bearing the registered GORILLA ULTIMATE Mark on Amazon.com or anywhere else other than its own U.S. website https://us.gorillaenergy.com/, further evidencing its prior abandonment of this mark in the United States and suggesting that it only started offering products bearing the registered GORILLA ULTIMATE Mark on its own U.S. website to avoid cancellation of the '591 Registration and to thereby improperly maintain the registration.

203. On January 6, 2022, PB and GDL executed a document titled "Confirmatory Trademark Assignment" which references a purported assignment from PB to GDL of the application that issued as the '591 Registration (i.e., U.S.

Appln. Serial No. 79/293,471) and the GORILLA ULTIMATE Mark covered thereby. The document is recorded at the United States Patent and Trademark Office at Reel 007552, Frame 0216.

204. On information and belief, the "Confirmatory Trademark Assignment" was not a valid or effective assignment of either the GORILLA ULTIMATE Mark covered by the '591 Registration or any goodwill associated with that mark and was not sufficient to confer any priority of use for, and/or any ownership of, the mark to GDL.

205. On information and belief, the "Confirmatory Trademark Assignment" constituted an assignment in gross, resulting in the abandonment of the GORILLA ULTIMATE Mark covered by the '591 Registration.

206. On information and belief, the ownership of the GORILLA ULTIMATE Mark and the U.S. trademark application therefor remained with or reverted to PB. However, on information and belief, given the purported assignment of the GORILLA ULTIMATE Mark to GDL, PB never intended to commence, and never commenced, bona fide use of the GORILLA ULTIMATE Mark in the United States, or discontinued any use of the mark in the United States without intent to resume such use.

207. Continued registration and/or use of GDL's GORILLA ULTIMATE Mark is likely to cause confusion, mistake or deception, and/or is being used by Defendants to misrepresent the source of goods and services, and to harm Plaintiffs.

208. When used in connection with the goods specified in GDL's '591 Registration, the GORILLA ULTIMATE Mark so closely resemble one or more of Plaintiffs' GORILLA Marks that it is extraordinarily likely that such use and registration will (i) cause consumer confusion as to the source or origin of GDL's goods; (ii) lead the consuming public to mistakenly infer an affiliation, connection, or association between Plaintiffs and GDL; and/or (iii) deceive consumers into believing that Plaintiffs have sponsored or endorsed GDL's goods.

209. The likelihood of confusion between GDL's GORILLA ULTIMATE Mark is enhanced by, at the least, the facts that (i) the dominant portion of GDL's mark is the word "GORILLA," which is identical or highly similar to each of Plaintiffs' GORILLA Marks, (ii) the goods specified in GDL's '591 Registration (*i.e.*, "energy drinks; carbonated soft drinks; flavored waters") are identical to or highly related to those offered under Plaintiffs' Marks, including the close marketplace relationship between energy drinks and dietary or nutritional supplements, and (iii) the parties' respective goods are sold through the same or similar channels of trade.

210. Plaintiffs have also achieved substantial commercial success and consumer recognition through the advertising, marketing, and promotion of products bearing the GORILLA Marks, such that consumers have come to associate the marks with Plaintiffs or a single source, and to expect a consistent level of quality, further enhancing confusion between GDL's GORILLA ULTIMATE Mark and Plaintiffs' GORILLA Marks.

211. Upon information and belief, GDL filed the application that led to the '591 Registration with full knowledge of Plaintiffs' prior rights in Plaintiffs' registered and common law GORILLA Marks and family of GORILLA Marks.

212. Plaintiffs are being competitively harmed by the continued registration of the '591 Registration. Plaintiff GM has initiated Opposition number 91289484 in the U.S. Trademark Office against Defendant GDL's U.S. Application Serial No. 90/075,969 for the word mark GORILLA, which infringes upon Plaintiffs' GORILLA Marks and which is blocking registration of Plaintiffs' one or more applied-for GORILLA Marks at the U.S. Trademark Office. In response to Plaintiff GM's opposition, Defendant GDL has asserted a prior registration defense (also known as "*Morehouse*" defense) as an affirmative defense against Plaintiff GM's grounds of opposition based on the '591 Registration. More particularly, GDL claims that "if the dissection and piecemeal consideration of trademarks now

advocated by Opposer [GM] is applied to GDL's ['591 Registration,] then Opposer [GM] cannot be further damaged because of the previously existing registration." *See* Applicant's Answer to Notice of Opposition, Affirmative Defenses, and Counterclaims dated February 3, 2025. Plaintiffs have been damaged, and will continue to be damaged, if the GORILLA ULTIMATE Mark of the '591 Registration is permitted to remain on the Principal Register because the '591 Registration stands as a potential bar to Plaintiffs' ability to federally register and protect its full suite of GORILLA marks for their goods and services.

213. In view of the foregoing, GDL's U.S. Reg. No. 6,829,591 should be cancelled on the grounds that Plaintiffs have priority of the use of, and superior trademark rights in, Plaintiffs' GORILLA Marks in connection with marketing, manufacturing, and sales of dietary supplements, energy drinks, and related products, on the grounds that GDL's registered GORILLA ULTIMATE Mark is confusingly similar to Plaintiffs' GORILLA Marks, and on the grounds that GDL abandoned its mark registered in the '591 Registration, pursuant to 15 U.S.C. §§ 1052(d) and 1064 under 15 U.S.C. § 1119 and/or 28 U.S.C. §§ 2201 and 2202.

**SIXTH CLAIM FOR RELIEF – Cancellation of U.S. Trademark Reg. No. 6,617,226 (15 U.S.C. §§ 1052(d), 1064)**

214. Plaintiffs incorporate by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

215. As more fully alleged above, there is an actual, substantial, and continuing justiciable controversy between the parties regarding the infringement of Plaintiffs' GORILLA Marks and Defendants' claimed defenses thereto. And, Plaintiffs will be damaged by the continued registration of Defendant GDL's U.S. Trademark Registration No. 6,617,226 (the "'226 Registration").

216. Under the Lanham Act, a party has grounds to cancel a registered mark if the mark "has been abandoned" (*see* Section 14 of the Lanham Act, 15 U.S.C. § 1064) or, within five years from registration, if the mark "so resembles a mark

registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive." (*see* Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d)). Additionally, under Section 37 of the Lanham Act, 15 U.S.C. § 1119, "in any action involving a registered mark[,] the court may determine the right to registration, order the cancelation of registrations, in whole or in part, … and otherwise rectify the register with respect to the registrations of any party to the action."

217. Defendant GDL obtained the '226 Registration for the colorized composite logo mark GFC GORILLA FIGHTING CHAMPIONSHIP & Design for "Non-alcoholic beverages" and other related goods in Class 32 ("GORILLA GFC Mark") exactly as shown here:

A copy of the '226 Registration is attached hereto as **Exhibit L**.

218. The '226 Registration for the stylized GORILLA ULTIMATE Mark has a registration date of January 18, 2022, a filing date of January 7, 2021, a claimed "priority date" of September 24, 2020 based on a Russian Federation trademark application, but no claimed date of first use in U.S. commerce.

219. Since at least 2017, years before the claimed priority, filing, and registration dates of the '226 Registration, Plaintiffs have continuously used and

promoted their family of GORILLA Marks in interstate commerce in connection with its dietary supplements and other related products. By virtue of Plaintiffs' continuous and substantial use and promotion of the GORILLA Marks, Plaintiffs' GORILLA family of marks and related GORILLA registered and common law marks have become a strong identifier of Plaintiffs and their products, and distinguish Plaintiffs' products from those of others. Plaintiffs have built significant and valuable goodwill in their GORILLA Marks.

220. On information and belief, GDL has never commenced use of the GORILLA GFC Mark of its '226 Registration in U.S. commerce, including since registration in 2022. Although Defendants started selling energy drinks in the United States in December 2024, Defendants' website(s) (https://us.gorillaenergy.com/ or https://gorillaenergy.us) does not include this mark. Indeed, when Defendants' website was launched in the United States in December 2024, no product bearing the GORILLA GFC Mark was included on the website, or has since been included.

221. On information and belief, while Defendants sell their other Infringing Products on Amazon.com, no product is offered for sale on Amazon.com which bears the GORILLA GFC Mark, and none has been for over 3 years. *See* https://www.amazon.com/stores/GorillaEnergy/page/2EFB85F3-9A56-4AC8-A8C6-B3770DA6924E?lp_asin=B0DW5VCYBY&ref_=ast_bln&store_ref=bl_ast_dp_brandLogo_sto.

222. On information and belief, while Defendants are selling their other Infringing Products at retail stores in the United States, no product which bears the GORILLA GFC Mark is offered for sale at retail stores, or has been for over 3 years.

223. On or about December 19, 2021, PB and GDL purportedly executed an assignment for assigning the application that issued as the '226 Registration (i.e., U.S. Appln. Serial No. 79/301,594) and the mark covered thereby from PB to GDL. The document is purportedly recorded at the United States Patent and Trademark

Office at Reel 007625, Frame 0569, but the actual document is not available for viewing.

224. On information and belief, the document purportedly recorded at the United States Patent and Trademark Office at Reel 007625, Frame 0569, was not a valid or effective assignment of either the GORILLA GFC Mark of the ‘226 Registration or any goodwill associated with that mark and was not sufficient to confer any priority of use for, and/or any ownership of, the mark to GDL.

225. On information and belief, the assignment purportedly assigning the GORILLA GFC Mark from PB to GDL constituted an assignment in gross, resulting in the abandonment of the GORILLA GFC Mark.

226. On information and belief, the ownership of the GORILLA GFC Mark and the U.S. trademark application therefor remained with or reverted to PB. However, on information and belief, given the purported assignment of the GORILLA GFC Mark to GDL, PB never intended to commence, and never commenced, bona fide use of the GORILLA GFC Mark in the United States, or discontinued any use of the mark in the United States without intent to resume such use.

227. Continued registration and/or use of GDL’s GORILLA GFC Mark is likely to cause confusion, mistake or deception, and/or is being used by Defendants to misrepresent the source of goods and services, and to harm Plaintiffs.

228. If and when used in connection with the goods specified in GDL’s ‘226 Registration, the GORILLA GFC Mark so resembles one or more of Plaintiffs’ GORILLA Marks that it is likely that such use and registration will (i) cause consumer confusion as to the source or origin of GDL’s goods; (ii) lead the consuming public to mistakenly infer an affiliation, connection, or association between Plaintiffs and GDL; and/or (iii) deceive consumers into believing that Plaintiffs have sponsored or endorsed GDL’s goods.

229. The likelihood of confusion between GDL's GORILLA GFC Mark is enhanced by, at the least, the facts that (i) the goods specified in GDL's '226 Registration (e.g., "energy drinks; carbonated soft drinks; flavored waters") are identical to or highly related to those offered under Plaintiffs' Marks, including the close marketplace relationship between energy drinks and dietary or nutritional supplements, and (ii) the parties' respective goods are sold through the same or similar channels of trade.

230. Plaintiffs have also achieved substantial commercial success and consumer recognition through the advertising, marketing, and promotion of products bearing their GORILLA Marks, such that consumers have come to associate the marks with Plaintiffs or a single source, and to expect a consistent level of quality, further enhancing confusion between GDL's GORILLA GFC Mark and Plaintiffs' GORILLA Marks.

231. Plaintiffs are being competitively harmed by the continued registration of the '226 Registration. Plaintiffs have been damaged, and will continue to be damaged, if the Mark of the '226 Registration is permitted to remain on the Principal Register because the '226 Registration stands as a potential bar to Plaintiffs' ability to federally register and protect its full suite of GORILLA marks for their goods and services.

232. In view of the foregoing, GDL's U.S. Reg. No. 6,617,226 should be cancelled on the grounds that Plaintiffs have priority of the use of, and superior trademark rights in, Plaintiffs' GORILLA Marks in connection with marketing, manufacturing, and sales of dietary supplements, energy drinks, and related products, on the grounds that GDL's registered GORILLA GFC Mark is confusingly similar to Plaintiffs' GORILLA Marks, and on the grounds that GDL abandoned its mark registered in the '226 Registration, pursuant to 15 U.S.C. §§ 1052(d) and 1064 under 15 U.S.C. § 1119 and/or 28 U.S.C. §§ 2201 and 2202.

**SEVENTH CLAIM FOR RELIEF – Cancellation of U.S. Application Serial Nos. 90/075,969, 98/626,911, 79/421,610 and 79/423,809 (15 U.S.C. §§ 1052(d), 1064)**

233. Plaintiffs incorporate by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

234. As more fully alleged above, there is an actual, substantial, and continuing justiciable controversy between the parties regarding the infringement of Plaintiffs' GORILLA Marks and Defendants' claimed defenses thereto. And, Plaintiffs will be damaged by Defendant GDL's pending U.S. Application Serial Nos. 90/075,969, 98/626,911, 79/421,610 and 79/423,809 as well as by its contemplated registration of these applications.

235. Plaintiffs own and actively use in commerce their Registered GORILLA Marks, common law GORILLA Marks, and their family of GORILLA Marks. Plaintiffs' GORILLA Marks are strong and distinctive and designate Plaintiffs as the source of all products advertised, marketed, sold or used in connection with the GORILLA Marks.

236. Defendant GDL (by its predecessor Premier Beverages P.B. Limited) on July 27, 2020 filed an intent-to-use Application serial no. 90/075,969 ("the '969 Application") for registration of the word mark GORILLA for "energy drinks; hemp drinks." Defendant GDL also filed for registration in the United States of the following logo marks for the stated goods: on July 1, 2024 intent-to-use Application serial no. 98/626,911 ("the '911 Application") and on April 17, 2025 (as an extension of a December 23, 2024 Madrid Protocol foreign application) Application serial no. 79/421,610 ("the '610 Application") and on May 15, 2025 (as an extension of a December 23, 2024 Madrid Protocol foreign application) Application serial no. 79/423,809 ("the '810 Application"):

| **98/626,911** | **79/421,610** | **79/423,809** |
|---|---|---|
| | | |
| Energy drinks | Dietary supplements for human beings, *et al.* | Non-alcoholic beverages, *et al.* |

*See* **Exhibits M**, **N**, **O** and **P**. Collectively, the ‘969, ‘911, ‘610 and ‘809 Applications are referred to herein as the “GDL Pending Applications.”

237. As set forth herein, Defendants’ use and registration of the applied-for marks in the GDL Pending Applications (“the Applied-for Marks”) create and will create a likelihood of confusion with Plaintiffs’ GORILLA Marks. As a result, Plaintiffs have been and continue to be harmed by Defendants’ use of the Applied-for Marks and will be harmed by registration of the Applied-for Marks.

238. On January 29, 2024, Plaintiff GM filed Opposition number 91289484 in the U.S. Trademark Office, seeking to prevent registration of the GORILLA word mark in GDL’s ‘969 Application. That Opposition proceeding is pending. On March 17, 2025, Plaintiff GM filed a motion to suspend that Opposition in view of this litigation. On April 8, 2025, the U.S. Trademark Office granted that motion, and the Opposition proceeding has now been suspended, pending final disposition of this

litigation. The other GDL Applications are in a procedural of pendency such that Opposition is not available to GM.

239. As a result of Plaintiffs' use of their GORILLA Marks in connection with their dietary supplements, energy drinks, and other related products, and extensive advertising, marketing, and promotion of their GORILLA Marks, the consuming public has come to recognize Plaintiffs, or at least a single source, as the owners of the GORILLA Marks, as well as the source of products offered and sold under their GORILLA Marks. The consuming public has also come to expect a certain level of quality from products sold under Plaintiffs' GORILLA Marks. Plaintiffs consequently derive significant goodwill from the consuming public's recognition, identification, and association of their GORILLA Marks.

240. The Applied-for Marks in the GDL Pending Applications are confusingly similar in sight, sound, meaning, and overall commercial impression to Plaintiffs' GORILLA Marks. The goods identified in the GDL Pending Applications are identical to, closely related to, or within highly related industries to the products marketed, distributed, and sold by Plaintiffs under Plaintiffs' GORILLA Marks.

241. When used in connection with the goods specified in the GDL Pending Applications, GDL's Applied-for Marks so closely resemble Plaintiffs' GORILLA Marks that it is extraordinarily likely that such use and registration will (i) cause consumer confusion as to the source or origin of GDL's goods; (ii) lead the consuming public to mistakenly infer an affiliation, connection, or association between Plaintiffs and GDL; and/or (iii) deceive consumers into believing that Plaintiffs have sponsored or endorsed GDL's goods.

242. Such use and/or registration of GDL's Applied-for Marks is likely to injure Plaintiffs and damage the significant goodwill and reputation embodied in the GORILLA Marks.

243. The likelihood of confusion is enhanced by, at least, the following facts: (i) the mark in GDL's '969 Application consists solely of the word "Gorilla," which

is wholly incorporated in each of Plaintiffs' GORILLA Marks; (ii) the marks in GDL's '911, '610 and '809 Applications are dominated by the word "GORILLA," a dominant element also present in each of Plaintiffs' GORILLA Marks; (ii) the goods in each of the GDL Pending Applications are identical to or highly related to those offered under Plaintiffs' Marks, including the close marketplace relationship between energy drinks and dietary or nutritional supplements; and (iii) the parties' respective goods are sold through the same or similar channels of trade.

244. Plaintiffs have achieved substantial commercial success and consumer recognition through the advertising, marketing, and promotion of products bearing the GORILLA Marks, such that consumers have come to associate the marks with Plaintiffs or a single source, and to expect a consistent level of quality, further enhancing a likelihood of confusion between GDL's Applied-for Marks and Plaintiffs' GORILLA Marks.

245. Upon information and belief, GDL filed each of the GDL Pending Applications with full knowledge of Plaintiffs' prior rights in Plaintiffs' registered and common law GORILLA Marks and family of GORILLA Marks.

246. Accordingly, GDL's use and/or registration of the Applied-for Marks in the GDL Pending Applications will cause irreparable harm to Plaintiffs, erode the distinctiveness of the Plaintiffs' GORILLA Marks, and undermine the goodwill that Plaintiffs have developed through substantial time, effort, and investment.

247. GDL's '969 Application is also blocking registration of Plaintiffs' one or more GORILLA Marks at the U.S. Trademark Office. Similarly, GDL's '911 Application will likely block registration of Plaintiffs' one or more GORILLA Marks at the U.S. Trademark Office, if it has not done so already. Plaintiffs have therefore been further damaged, and will continue to be damaged, if the GORILLA word mark in GDL's '969 Application and/or the logo marks in GDL's '911, '610 and '809 Applications are permitted to be registered on the Principal Register because either one of the GDL Applications stands as a potential bar to Plaintiffs'

ability to federally register and protect its full suite of GORILLA marks for their goods and services.

248. As discussed above, the "Confirmatory Trademark Assignment" of the GORILLA word mark in GDL's '969 Application, recorded at the United States Patent and Trademark Office at Reel 007552, Frame 0216, was not a valid or effective assignment of either that mark or any goodwill associated with the mark and was not sufficient to confer any priority of use for, and/or any ownership of, the mark to GDL.

249. On information and belief, the "Confirmatory Trademark Assignment" constituted an assignment in gross, resulting in the abandonment of the GORILLA word mark in GDL's '969 Application.

250. On information and belief, the ownership of the GORILLA word mark and the '969 Application remained with or reverted to PB. However, on information and belief, given the purported assignment of the GORILLA word mark in the '969 Application to GDL, PB never intended to commence, and never commenced, bona fide use of the GORILLA word mark in the United States, or discontinued any use of the mark in the United States without intent to resume such use.

251. Accordingly, GDL's U.S. Application Serial No. 90/075,969 for the GORILLA word mark and U.S. Application Serial Nos. 98/626,911, 79/421,610 and 79/423,809 for its logo GORILLA marks are subject to cancellation and should be cancelled pursuant to 15 U.S.C. §§ 1052(d) and 1064 under 15 U.S.C. § 1119 and/or 28 U.S.C. §§ 2201 and 2202.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for:

A. A preliminary and permanent injunction restraining Defendants, their officers, directors, agents, employees, representatives, and all persons acting in concert with Defendants, from engaging in any further trademark infringement and unfair competition;

B. Judgment in favor of Plaintiffs for each and all of Plaintiffs' enumerated causes of action;

C. An award of Defendants' profits, or Plaintiffs' actual damages, whichever are greater;

D. A finding that Defendants' infringing actions were and are willful;

E. A finding that this is an exceptional case under 15 U.S.C. § 1117;

F. Trebling of and/or any increase in damages as warranted;

G. An award to Plaintiffs of Plaintiffs' attorney's fees and costs incurred in this matter;

H. Judgment cancelling Defendant GD's U.S. Registration Nos. 6,829,591 and 6,617,226, and U.S. Application Serial Nos. 90/075,969, 98/626,911, 79/421,610 and 79/423,809; and

I. Such other and further relief as the Court deems proper.

Dated: July 23, 2025

CLARK HILL LLP
DAVID L. BRANDON
JOHN K. KIM
JAMES P. MURPHY
DAVID M. PERL

By: */s/ John K. Kim*
John K. Kim

Attorneys for Plaintiffs Gorilla Mind LLC and Gorilla Mind Beverage, Inc.

**DEMAND FOR JURY TRIAL**

Plaintiffs request a trial by jury on all issues so triable.

Dated: July 23, 2025

CLARK HILL LLP
DAVID L. BRANDON
JOHN K. KIM
JAMES P. MURPHY
DAVID M. PERL

By: */s/ John K. Kim*
John K. Kim

Attorneys for Plaintiffs Gorilla Mind LLC and Gorilla Mind Beverage, Inc.